In re Kenneth M. BANCROFT, Debtor.

In re Walter R. DODDS and Debra M. Dodds, Debtors.

In re Wendy L. RODGERS, Debtor.

In re Cheryl A. STRUVE, Debtor.

In re Adeline SMITH, Debtor.

Bankruptcy Nos. 96–82458, 96–82531, 96–82685, 96–82740 and 96–82810.

United States Bankruptcy Court, C.D. Illinois.

Jan. 16, 1997.

---

Richard E. Barber, Chapter 7 Trustee, Hanlon & Barber, Galesburg, IL.

Joseph Spiezer, Rock Island, IL, for Debtors.

**OPINION**

WILLIAM V. ALTENBERGER, Chief Judge.

In each of these five cases the Trustee filed identical applications to have the Debtors' attorney refund the $150.00 fee charged the Debtors to represent them in their Chapter 7 bankruptcy cases. It is the Trustee's position that the $150.00 fee is excessive, as the attorney did not appear at the first meetings of creditors. It is the attorney's position that he provides an alternative to the usual form of representation, in that he prepares the bankruptcy petition and schedules for a $150.00 fee and gives a debtor the option of being represented at the first meeting of creditors. If a debtor opts not to be represented, there is no additional fee. If the debtor wants representation, an additional fee is required.

Hearings were held on all applications. In *Dodds*, Mrs. Dodds testified that she had not met with the attorney. When she went to the office she asked the attorney's secretary to see an attorney and the secretary told her that she could answer any questions which she might have. The Dodds filled out a questionnaire and the secretary asked questions and filled in the answers and then signed the attorney's name to the petition. Mrs. Dodds told the secretary that they wanted an attorney to go to the first meeting of creditors with them and that they would pay extra but the secretary told them that it was not necessary. The Dodds took the petition with them, later signed it, made copies, and filed it themselves. Prior to the meeting of creditors, she did not talk with the attorney. He did not explain the difference between a Chapter 13 and a Chapter 7 bankruptcy, but they did have some information about bankruptcy from papers they were given by the secretary. At the meeting of creditors, an attorney for one of their creditors asked whether the Dodds would be willing to execute a quit-claim deed in lieu of mortgage foreclosure and Mrs. Dodds stated that she did not know what that meant. On examination by the attorney, she stated that she was happy with the services they received for the price they paid.

In response, the attorney testified by explaining the operation of his office as follows: First, the debtors fill out a questionnaire. The attorney reviews it. Then he conducts a group meeting with four, five or six petitioners, which usually occurs before the filing of the bankruptcy petition, but always occurs before the first meeting. The Trustee asked the attorney if he met with the Dodds and he answered he could not remember. The attorney stated that he didn't think the Dodds asked him to attend the first meeting of creditors.

In *Bancroft* the Debtor testified his mother saw an ad on TV and he went down to the attorney's office. He paid the fee and talked to the attorney's secretary. She gave him an information packet to fill out and bring back. On his first visit the secretary told him that bankruptcy involved filling everything out, the signing of the papers, the secretary filing the papers, and the Debtor going to court and receiving a discharge notice. He never talked to the attorney prior to the filing. He had not met the attorney prior to the hearing on the Trustee's application held on November 7, 1996. He thought that the attorney would be at the first meeting of creditors, but the attorney was not there. He did not talk to the attorney until he received the notice of the hearing on the Trustee's application. He called and talked to the secretary who told him he would need to talk to the attorney. The attorney told him he did not need to come to the hearing, but that the attorney would be there. The attorney testified that he told Mr. Bancroft that he needed to appear.

In *Struve, Rodgers,* and *Smith,* the Trustee and the attorney agreed there was no need for any testimony as to the nature and extent of the representation, as the testimony would be similar to the testimony in *Dodds* and *Bancroft.* The Court took the matters under advisement and both the Trustee and the attorney filed written briefs.

The Trustee and the attorney agree that the issue in these five cases is whether there is a minimum level of representation that is required by a debtor's attorney to earn a professional fee, and if so, what that may be. The Trustee argues there is and that the attorney failed to provide it as the attorney's contact with his clients was minimal. The attorney's secretary met with the debtors. She answered their questions. She advised them that they need not speak with the attorney nor was it necessary for the attorney to attend the first meeting of creditors with them. The attorney did not attend the first meeting of creditors.

The attorney argues he provided legal services to justify a $150.00 fee in that he not only provided clerical services in preparing the petitions and schedules, he also reviewed them, including a legal determination of which exemptions apply and whether the petitions were appropriate considering the debtor's financial condition. He acknowledges more legal services could have been provided, but contends a debtor has the right to limit the extent of legal services they receive and pay for. The attorney views first meetings of creditors as "babysitting sessions" and does not think it is necessary for him to attend them. He contends that he was willing to go to the meetings of creditors if the debtors were willing to pay extra.

■ The answer to the first question of whether there is a minimum level of representation in bankruptcy to claim a professional fee is clearly yes. That conclusion is drawn from the Bankruptcy Code, which, by Sections 327 to 330, draws a distinction between professional fees and § 110 which governs a "bankruptcy petition preparer", 11 U.S.C. §§ 327 to 330, and § 110.

The more difficult questions are what are the minimum services required to claim a fee, may they be waived, and if so, on what basis. These questions have to be answered at a time when the approaches to the practice of law have changed and continue to change. In an economic context the practice of law for a livelihood is a profit oriented business. With the changing approaches to the practice of law the business aspects associated with the profession have come to the forefront and have taken on a new importance.

This is particularly apparent where legal services are being provided to the occasional consumer of such services, someone who does

not regularly use an attorney. For example, someone seeking to dissolve a marriage, to pursue a personal injury, or to file a bankruptcy case.[1] There is overt competition to represent the occasional consumer of legal services. Attorneys advertise. Consumers respond. Some consumers shop for legal services, primarily considering the fee at which the legal services are offered. Some are willing to limit the services they receive for a limited fee.

The legal profession is paying more attention to the bottom line. Part is due to competition, part to consumer demand for efficiency and affordable fees, and part to a recognition that an attorney's time is limited and if the bottom line is to be improved, ways have to be found to provide more services in a limited amount of time.

These factors have led to an increased use of support staff, trained and experienced paralegals and secretaries, to handle routine matters not involving legal judgments or advice, and an increased use of computers to generate routine forms and documents. Some in the profession are willing to practice law by specializing, limit the services they offer, charge a lower fee, and rely on their support staff and volume to maintain or improve the bottom line. Those approaches to the practice of law can result in there being a dim line between what is, or is not, required to justify a professional fee.

Black's Law Dictionary (6th Ed.) defines the terms:

"Profession" to mean:

A vocation or occupation requiring special, usually advanced, education, knowledge, and skill; e.g. law or medical professions. Also refers to whole body of such profession.

The labor and skill involved in a profession is predominantly mental or intellectual, rather than physical or manual.

And "professional" to mean:

One engaged in one of learned professions or in an occupation requiring a high level of training and proficiency.

Rule 1.1(a) of the Illinois Rules of Professional Conduct (RPC Rule 1.1(a)) provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation necessary for the representation.

Subsection (c) of Rule 1.2, governing the scope of representation, provides:

A lawyer may limit the objectives of the representation if the client consents after disclosure.

Subsection (b) of Rule 1.4, governing communication, provides:

A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

■ It would follow that a professional, practicing bankruptcy law, cannot apply a high level of knowledge and skills unless he has some contact, and first meets, with the client to determine the client's needs and explains what action, if any, is required and its effects. Reviewing papers prepared by a secretary from information supplied by a client to a secretary is not sufficient, as the high level of knowledge and skills is not present when the questions are asked. The secretary may or may not ask the right questions. Furthermore, if a problem exists, the secretary may not recognize it as such. If the secretary did so, the secretary cannot advise the client, as that would constitute the practice of law.

Nor can an attorney apply his professional knowledge and skills without attending the first meeting of creditors. By filing the petition in bankruptcy, the attorney sets in motion a series of events, including the first meeting of creditors, which exposes a layperson to a potential plethora of legal hurdles. The layperson will be exposed to questioning by a professional trustee and attorneys representing creditors. The layperson may be asked to take certain actions. In response, the layperson, acting out of ignorance or feeling that there was no need for an attor-

---

**1.** These approaches to the practice of law can also be seen where legal services are being provided to creditors, in such areas as lift stay litigation, mortgage foreclosure, credit card collection, and objections to dischargeability of a debt.

ney to represent him, may say or do something to his or her detriment. Having initiated the process, an attorney must shepherd the client through it, to its conclusion.

 The last two questions that need to be answered is whether legal services can be waived by a client, and if so, on what basis. Under Rule 1.2(c) of the RPC, an attorney can limit the scope of representation, but only if the client consents after disclosure. Disclosure involves the attorney explaining to a debtor the nature of the bankruptcy process, what problems could or will be encountered, how those problems should be addressed, and the risks or hazards, if any, associated with those problems. Consent involves a clear understanding on the part of the debtor as to these factors and the possible results of a debtor proceeding without an attorney being present.

That clearly did not occur in these five cases. In fact, in both *Dodds* and *Bancroft* the debtors wanted the attorney to attend the first meeting of creditors with them. They went alone without having first met with the attorney or discussing these factors.

It is less than sincere to suggest that the attorney is offering a reasonably priced alternate to usual legal representation, when there is no showing the alternatives were explained by the attorney to the debtors and the debtors made a knowledgeable decision. It would appear to this Court that the debtors in effect received nothing more than the services of a "bankruptcy petition preparer" when they met with the attorney's secretary who took the information and prepared the petitions and schedules.

For those reasons this Court finds the attorney should return to each Debtor the $150.00 fee he received in each case.[2]

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

2.  In *Dodds* this Court has previously ordered a return of the $150.00 on the grounds the secre-

## ORDER

For the reasons set forth in the Opinion entered this day, IT IS HEREBY ORDERED:

1.  Joseph Spiezer is directed to return the $150.00 fee to each of the above captioned debtors.

2.  Joseph Spiezer is directed to provide proof to the Court that such payments have been made.

tary and not the attorney signed the attorney's signature in places requiring the attorney to sign.