**In re Thomas STEGEMANN, Debtor.**

**Bankruptcy No. 96–83241.**

United States Bankruptcy Court,
C.D. Illinois.

March 3, 1997.

Richard E. Barber, Hanlon & Barber, Galesburg, IL, Chapter 7 Trustee.

Joseph Spiezer, Rock Island, IL, for Debtors.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

This is the sixth of six cases where the Chapter 7 Trustee filed an application to have the attorney refund the $150.00 fee charged the debtors to represent them in their bankruptcy cases. It is the Trustee's position that the fee is excessive, as the attorney did not appear at the first meeting of creditors. It is the attorney's position that he does not attend first meetings of creditors unless requested by the client, the Debtor did not so request, and the Debtor is satisfied with the representation. An evidentiary hearing was held and the matter taken under advisement.

The Debtor testified that he had consulted other attorneys about filing bankruptcy and concluded he could not afford to pay their fee. After he saw the attorney's television commercial he went to the attorney's office in Rock Island, Illinois. There he talked to the attorney's secretary. She obtained the required information from him. She explained his bankruptcy options and his exemptions to him.

The Debtor left and returned later to review and sign the bankruptcy papers that had been prepared. He took the papers with him and filed them. The attorney's statement filed pursuant to Rule 2016(b) states that the services to be rendered include representation of the Debtor at the meeting of creditors. The attorney testified that through oversight this part of the statement was not stricken.

At neither meeting with the secretary did the Debtor request to see the attorney, the secretary did not suggest he do so, nor did the attorney present himself and consult with the Debtor. The secretary told him that he would be representing himself at the first meeting of creditors. At the first meeting of creditors the Debtor thought he was representing himself, felt adrift at the time, but was satisfied after it was over. After the first meeting of creditors the attorney did meet with the Debtor to discuss several matters.

The issues presently before this Court are identical to the issues presented in the other five cases. Is there a minimum level of services in bankruptcy to claim a professional fee. If so, what are those minimum services and may they be waived. *See In re Bancroft*, 204 B.R. 548. In *Bancroft*, this Court first held that there is a minimum level of representation in bankruptcy to claim a professional fee.

As to what constitutes minimum services, this Court in *Bancroft* stated:

Rule 1.1(a) of the Illinois Rules of Professional Conduct (RPC Rule 1.1(a)) provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation necessary for the representation.

Subsection (c) of Rule 1.2, governing the scope of representation, provides:

A lawyer may limit the objectives of the representation if the client consents after disclosure.

Subsection (b) of Rule 1.4, governing communication, provides:

A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

It would follow that a professional, practicing bankruptcy law, cannot apply a high level of knowledge and skills unless he has some contact, and first meets, with the client to determine the client's needs and explains what action, if any, is required and its effects. Reviewing papers prepared by a secretary from information supplied by a client to a secretary is not sufficient, as the high level of knowledge and skills is not present when the questions are asked. The secretary may or may not ask the right questions. Furthermore, if a problem exists, the secretary may not recognize it as such. If the secre-

tary did so, the secretary cannot advise the client, as that would constitute the practice of law.

Nor can an attorney apply his professional knowledge and skills without attending the first meeting of creditors. By filing the petition in bankruptcy, the attorney sets in motion a series of events, including the first meeting of creditors, which exposes a layperson to a potential plethora of legal hurdles. The layperson will be exposed to questioning by a professional trustee and attorneys representing creditors. The layperson may be asked to take certain actions. In response, the layperson, acting out of ignorance or feeling that there was no need for an attorney to represent him, may say or do something to his or her detriment. Having initiated the process, an attorney must shepherd the client through it, to its conclusion.

In the case presently before this Court, the attorney did not have any contact with the Debtor prior to the first meeting of creditors nor did the attorney attend the first meeting of creditors. Having failed to do so, it follows that he provided no professional services which could justify being paid a professional fee.

As to the last issue of whether legal services can be waived by a client, and if so, on what basis, this Court, in *Bancroft* stated:

> Under Rule 1.2(c) of the RPC, an attorney can limit the scope of representation, but only if the client consents after disclosure. Disclosure involves the attorney explaining to a debtor the nature of the bankruptcy process, what problems could or will be encountered, how those problems should be addressed, and the risks or hazards, if any, associated with those problems. Consent involves a clear understanding on the part of the debtor as to these factors and the possible results of a debtor proceeding without an attorney being present.

In the case presently before this Court all the Debtor's contact up to and including the first meeting of creditors was with the attorney's secretary, the Debtor had absolutely no contact with the attorney until after the first meeting of creditors. There was no waiver because there was no disclosure by the attor-

ney and no consent by Debtor based upon his clear understanding of what was involved.

At the hearing it was also brought out that Exhibit "B" to Debtor's petition which provides as follows:

**EXHIBIT "B"**

(To be completed by attorney for individual chapter 7 debtors with primarily consumer debts.)

I, the attorney for the debtor(s) named in the foregoing petition, declare that I have informed the debtor(s) that (he, she, or they) may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under such chapter.

x /s/ Joseph Spiezer                    7–30–96

Attorney Joseph Spiezer

was not true because the secretary and not the attorney explained the options. The attorney contends his affidavit is correct because the secretary, with his direction, provided the explanation.

Rule 5.5(b) of the Illinois Rules of Professional Conduct (RPC Rule 5.5(b)) provides:

> A lawyer shall not:
>
> . . . .
>
> (b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

In discussing a similar provision in the Code of Professional Responsibility of the State Bar of Georgia, the court in *In re Stoutamire*, 201 B.R. 592 (Bkrtcy.S.D.Ga. 1996) stated:

> In Georgia it is unlawful for one who is not a duly licensed attorney to practice law. O.C.G.A. § 15–19–51. According to Canon 3 of the Code of Professional Responsibility of the State Bar of Georgia, a lawyer is to help to prevent this violation from occurring. DR 3–101(A) takes this concept a step further by stating that "[a] lawyer shall not aid a nonlawyer in the unauthorized practice of law." Whenever a lawyer delegates responsibilities to an employee, he or she must be careful not to violate this rule. The Ethical Considerations and Advisory Opinions accompanying that rule provide further explanation of its scope.
>
> According to EC 3–6, an attorney should provide proper supervision of any non-law-

yer employee who is engaged in activities which might be construed as the unauthorized practice of law. Specifically, the text therein states:

> A lawyer often delegates tasks to clerks, secretaries, and other laypersons. Such delegation is proper if the lawyer maintains a direct relationship with his client, supervises the delegated work, and has complete professional responsibility for the work product. This delegation enables a lawyer to render legal service more economically and efficiently.

Advisory Opinion No. 21 stresses the point that if an attorney is going to delegate duties, he must provide proper supervision. The opinion holds that

> strict adherence to a program of supervision and direction of a paralegal is required in order to avoid any charges that the attorney is aiding his paralegal in the unauthorized practice of law.... [D]elegation of activities which ordinarily comprise the practice of law is proper only if the lawyer maintains a direct relationship with the client involved, supervises and directs the work delegated to the paralegal and assumes complete ultimate responsibility for the work product produced by the paralegal. Supervision of the work of the paralegal by the attorney must be *direct and constant* to avoid any charges of aiding the unauthorized practice of law.

Ga. Disciplinary Board, Advisory Op. 21 (1977) (emphasis added). While it is clear that supervision of the non-lawyer is required, the level of supervision which would be adequate is not apparent from the rule or the advisory opinion. The only directive is that the supervision be "direct and constant." Case law provides us with further guidance here.

The United States Bankruptcy Court for the Northern District of California addressed the non-attorney supervision issue with respect to paralegals who prepare bankruptcy schedules. *In re Hessinger & Associates,* 192 B.R. 211 (N.D.Cal.1996). That court found attorneys to have aided in the unauthorized practice of law by allowing a substantial amount of legal work to be performed by paralegals without adequate supervision. *See id.* at 222–23. The court used the following facts, *inter alia,* to support its recommendation that the attorneys be sanctioned:

> (1) it was routine practice for paralegals to complete bankruptcy schedules which a lawyer signed later;
>
> (2) one paralegal admitted preparing bankruptcy schedules, filing bankruptcy petitions and making decisions on which exemptions clients should claim, all without proper supervision; and
>
> (3) the firm was organized much like a production line, with little or no review by attorneys.

*See id.* With these facts, the court concluded that "a substantial amount of legal work [was] in fact performed by paralegals or non-lawyer 'credit specialists' with little or no supervision from attorneys." *Id.* at 222. While the court recognized that paralegals are often used for routine tasks such as filling out bankruptcy schedules, it refused to decline to enforce the ethical rules, even where their application requires attorneys to perform work which might otherwise be done less expensively. *Id.* at 223.

The Eastern District of Michigan Bankruptcy Court provided further example in *Matter of Bright,* 171 B.R. 799 (Bankr. E.D.Mich.1994). The court stated that under the Michigan Rules of Professional Conduct, a lawyer is not adequately supervising a non-lawyer if:

> (1) the lawyer does not know of the existence or content of meetings between the non-lawyer and the debtor;
>
> (2) if the lawyer relies solely on the non-lawyer as intermediary, neglecting to meet directly with the client; or
>
> (3) if the lawyer fails to use his independent professional judgment to determine which documents prepared by the non-lawyer should be communicated outside the law office.

*Id.* at 805. While the court examined this issue under Michigan's ethical rules, the opinion still provides some useful guidelines.

In the Eleventh Circuit, the treatment of supervision of non-attorney work has been similar. The Northern District of Georgia Bankruptcy Court used DR 3–101(A) and EC 3–6 to support its holding that the attorney in question "totally abdicated his duties, responsibilities, and judgment as an attorney to non-attorney personnel." *In re Martin*, 97 B.R. 1013, 1020 (Bankr. N.D.Ga.1989). The court concluded that the attorney had aided in the unauthorized practice of law with the following reasoning:

> The evidence reflects that the most fundamental and minimal of professional services required of an attorney to his client are lacking. This bankruptcy petition was prepared, signed, and filed by someone other than [the attorney], without his participation. The apparent casual handling of this case does not reflect any actual attorney contact or representation up to the time of filing. Whatever the representation, it was performed by non-attorneys.

*Id.* at 1020–21. It should be noted that, in *Martin*, the non-attorney did everything up to the time of filing, including signing the actual attorney's name on the petition and other pleadings (although with the attorney's permission). *See id.* at 1020. This fact seemed to be crucial to the court's holding because it showed that absolutely no client contact or supervision of the non-attorney's work had taken place to that point. *See id.* at 1020–21.

One of the requirements for delegating to a non-lawyer is that the lawyer maintain a direct relationship with the client. In the case before this Court the attorney cannot successfully maintain he properly delegated responsibilities to his secretary as he had no contact or direct relationship with the Debtor until after the first meeting of creditors.

For those reasons this Court finds the attorney should return to the Debtor the $150.00 fee he received.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in the Opinion entered this day, IT IS HEREBY ORDERED:

1. Joseph Spiezer is directed to return the $150.00 fee to the above captioned Debtor.

2. Joseph Spiezer is directed to provide proof to the Court that such payment has been made.