**In re Theresa Elaine JONES, Debtor.**

**R. Scott Schofield, Appellant,**

v.

**United States Trustee, Appellee.**

Civ.A. No. 96–M–2446.
Bankruptcy No. 96–13016 CEM.

United States District Court,
D. Colorado.

July 15, 1999.

R. Scott Schofield, Colorado Springs, CO, pro se.

Leo M. Weiss, Denver, CO, U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

MATSCH, Chief Judge.

This is an appeal under 28 U.S.C. § 158(a) of a final judgment of a bankruptcy judge ordering the appellant, R. Scott Schofield, to disgorge $756.28 from a payment received by him from the debtor before the filing of her Chapter 7 bankruptcy proceeding as prepayment for costs and attorney's fees for services performed and to be performed through the first meeting of creditors. The order required payment to the trustee for the benefit of the estate, pursuant to oral findings and conclusions at a hearing held on October 8, 1996, determining that the appellant's fee allowance is limited to $700 with costs of $43.72. The cited authority for the order is 11 U.S.C. § 329. Because the findings result from an erroneous interpretation of the Bankruptcy Code, the judgment is reversed.

On March 19, 1996, Theresa Elaine Jones filed her voluntary petition under Chapter 7 of the Bankruptcy Code with R. Scott Schofield appearing as her attorney. Mr. Schofield submitted a statement pursuant to Bankruptcy Rule 2016(b), containing the following entries:

2. The compensation paid or agreed to be paid by the debtor(s), to the undersigned is:

a) For legal services rendered or to be rendered in contemplation of and in connection with this case .... $1,500.00

b) Prior to the filing of this statement, debtor(s) have paid $1,500.00

c) The unpaid balance due and payable is .... $0.00

4. The Services rendered or to be rendered include the following:

a) Analysis of the financial situation, and rendering advice and assistance to the debtor(s) in determining whether to file a petition under title 11 of the United States Code.

b) Preparation and filing of the petition, schedules, statement of affairs and other documents required by the court.

c) Representation of the debtor(s) at the meeting of creditors.

The United States Trustee filed a motion for accounting and examination of fees containing the following allegation:

3. That fee appears to (sic) excessive where only twenty (20) creditors were listed and there appeared to be no complications requiring any more than a few hours of professional time.

Mr. Schofield filed a response to the motion. The bankruptcy judge set an evidentiary hearing at which the debtor's attorney was required to justify the fee he had received.

In determining that the fee was unreasonable, the bankruptcy judge concluded that no amount could be allowed for post-petition services because 11 U.S.C. § 330(a) does not permit any allowance of compensation to counsel for Chapter 7 debtors from assets of the bankruptcy estate.

■ The bankruptcy judge expressly relied on two prior opinions from other bankruptcy judges of this court in forming the view that the Bankruptcy Code does not permit any pre-petition payment for post-petition services. *In re NBI, Inc.*, 129 B.R. 212 (Bankr.Colo.1991) and *In re Friedland*, 182 B.R. 576 (Bankr.Colo.1995). *NBI, Inc.* is inapposite and *Friedland* was based on a flawed analysis.

The issue presented in *NBI, Inc.* was approval of a motion by a Chapter 11 corporate debtor to employ counsel under 11 U.S.C. § 327 under a pre-petition agreement providing for an advance payment of an "earned retainer." The court held that such a compensation arrangement was not reasonable under 11 U.S.C. § 328(a). That section authorizes the employment of professional persons, with the court's approval, under Section 327 "on any reasonable terms and conditions of employment, including on a retainer." In reaching that conclusion the bankruptcy judge considered disciplinary decisions of the Colorado Supreme Court, requiring refunds of unearned advance fee payments and Colorado's DR 9–102 that all funds of clients paid to lawyers must be separated into interest-bearing insured depository accounts to preserve their identity as property of the client. Saying that an "earned retainer" is inherently unreasonable under Section 328(a) and that the concept of an "earned retainer" is "simply an anomaly in a Chapter 11 case" (*Id.* at 222), the court approved employment upon modifications of the terms to require counsel to hold the funds in trust as property of the estate and to submit an accounting of services and expenses for court approval for appropriate interim and final awards under Section 330(a) of the Bankruptcy Code. An acceptance of both the reasoning and result of the *NBI, Inc.* opinion does not assist in guiding the decision in this case. It is limited to the context of Chapter 11 proceedings requiring the services of counsel in attempting to achieve reorganization of the debtor.

The bankruptcy judge deciding the *Friedland* case concluded that Congress precluded any pre-payment of fees to the debtor's attorney for post-petition services in a Chapter 7 proceeding by eliminating the debtor's attorney from those authorized to obtain awards of compensation from the bankruptcy estate under Section 330(a) in the Bankruptcy Reform Act of 1994. The essential premise for this reasoning is the assumption that any prepay-

ment for legal services to be performed for the debtor in the ordinary course of her bankruptcy proceeding is impermissible and that all such payments are automatically considered to be assets of the bankruptcy estate. The *Friedland* opinion contrasts Chapter 7 proceedings with those under Chapter 13 on the ground that in those reorganization proceedings the debtor is obliged to prepare a plan for payment to creditors and that post-petition earnings must be contributed to that plan whereas in a liquidation proceeding, post-petition earnings remain with the debtor. The presumption then is that the debtor's attorney can obtain payment from his client out of her post-petition earnings.

The bankruptcy judges in *Friedland* and in this case failed to appreciate the language of Section 329. It reads as follows:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, *whether or not* such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered *or to be rendered* in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) *If such compensation exceeds the reasonable value of any such services,* the court may cancel any such agreement, *or order the return of any such payment, to the extent excessive,* to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12 or 13 of this title; or

(2) the entity that made such payment (emphasis added).

■ This statute expressly recognizes that pre-petition payments may be made for services to be rendered in connection with the case and only that amount by which such paid compensation exceeds the reasonable value of such services must be returned to become property of the bankruptcy estate. If the pre-payment is reasonable, it is not property of the estate and the attorney may keep it. Every debtor must attend a first meeting of creditors under Section 341, and it is to be expected that the debtor will then be represented by her attorney. The time involved in attendance at such a session is not within the control of the attorney. Thus, post-petition services are required in Chapter 7 cases.

■ There is nothing unlawful or unethical about an agreement by debtor's counsel to accept reasonable compensation for services which must be performed after the filing of the petition. The court has ample authority and a direct responsibility to determine the reasonableness of such payments under Section 329(b).

■ Determining the reasonableness of the fees of debtor's counsel requires the application of the same principles as other fee awards. They are summarized succinctly in the landmark case of *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir.1974). *See In Re Permian Anchor Services, Inc.*, 649 F.2d 763 (10th Cir.1981). Yet, there are differences in Chapter 7 bankruptcy proceedings for individuals that are troublesome both for the court and counsel. There are two problems. First, these bankruptcy proceedings are in themselves not adversarial in nature. Thus, *Johnson* factors that are not really relevant include "the undesirability of the case," "the preclusion of other employment," "whether the fee was fixed or contingent" and "the strength of the opposition."

■ The second problem, related to the first, is that much of the necessary work done is not apparent to the trustee

**42**

or to the bankruptcy judge. The primary responsibility of an attorney advising a client contemplating a bankruptcy filing is whether she should initiate the proceeding. That requires analysis of the particular financial circumstances of the debtor, including a cost benefit analysis with respect to debts to be discharged and any debts not subject to discharge, the property rights of all secured creditors and what obligations the debtor may wish to reaffirm. Other factors to be considered are the potential effects on the debtor's present and future employment, the consequences to the family and the emotional overburden of admitting failure in the management and conduct of one's affairs. Frequently, a debtor is already involved with or faces the prospect of other types of litigation. Adequate analysis and counseling should also consider the alternative of a Chapter 13 filing. The importance of counseling is underscored by noting that the United States trustee has the duty to examine the debtor at the Section 341 meeting to ensure her awareness of the effects of the filing. Much more is required of the debtor's attorney than simply knowledge of the forms and procedures. That is why it is the work of lawyers as learned intermediaries.

It is reasonable to expect that attorneys who undertake the representation of consumers in bankruptcy proceedings will organize their offices in ways which will provide economies of time by using some standardized procedures and the assistance of paraprofessionals. The amounts of fees involved in these are small, taken separately, and profitability depends upon a substantial volume of cases. Thus, advertising is an expected component of this type of practice. *Johnson* recognizes that market forces are relevant to the reasonableness of fees for lawyers. Accordingly, the customary fee charged in the community will ordinarily be the fees charged by those who have a substantial volume of bankruptcy cases. There well may be differences among communities in that regard with the highest volumes found in the most populous areas.

 Efficiency in court operations compels some practice which will circumvent the need for hearings in all but the most unusual cases. Accordingly, it is appropriate for the bankruptcy judges to establish a presumptively reasonable fee amount which may well be on a sliding scale dependent upon several relevant factors. That may best be done by the adoption of a local rule after public comment and an opportunity for suggestions by the practicing bar. The disclosure forms should also be modified to provide counsel with the opportunity to point out special circumstances attendant upon a larger fee.

Upon the conclusion that the bankruptcy judge's decision resulted from legal error, it is

ORDERED that the decision is reversed and this matter is remanded for further proceedings consistent with the views expressed in this opinion.