**In re Harry R. and Kelly A. JOHNSON, Arthur J. and Tara D. Pasko, Richard G. and Christine A. Stange, Curtis A. and Nickie V. Wanous, Debtors.**

Nos. 02–60812, 02–60897, 02–60942, 02–60835.

United States Bankruptcy Court, D. Minnesota.

April 2, 2003.

Harry R. and Kelly A. Johnson, pro se.

Arthur J. and Tara D. Pasko, pro se.

Richard G. and Christine A. Stange, pro se.

Curtis A. and Nickie V. Wanous, pro se.

### ORDER TO RETURN PAYMENT PURSUANT TO 11 U.S.C. § 329(b)

DENNIS D. O'BRIEN, Bankruptcy Judge.

At Fergus Falls, Minnesota.

This matter came before the Court on the United States Trustee's motion for an order to return payment under 11 U.S.C. § 329(b). A hearing was held on January 28, 2003. Sarah Wencil appeared on behalf of the United States Trustee, and Samuel Johnson, counsel for the debtors in the above captioned cases, appeared *pro se*. At the conclusion of the hearing the Court invited briefs from both parties. Upon the filing of supplemental briefs by February 13th, the Court took the matter under advisement.

Based upon all the files, records and proceedings herein, being fully advised in the premises, the Court now makes the following Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I. Background

The debtors in these cases were represented by attorney Samuel Johnson. The Rule 2016(b) compensation statements filed by Johnson in each of these cases provide, among other things: [1]

4. The Services rendered or to be rendered include the following:

a) Analysis of the financial situation, and rendering advice and assistance to the debtor(s) in determining whether to file a petition under title 11 of the United States Code.

b) Preparation and filing of the petition, schedules, statement of affairs and other documents required by the court.

c) Representation of the debtor(s) at the meeting of creditors.

■ Sometime in 1998 or 1999, Johnson began offering his clients the option to reduce his fee by the debtors agreeing to attend the meeting of creditors [2] alone, without his presence and counsel. Since he began offering this alternative, none of Johnson's clients have chosen to pay the higher or non-discounted fee in order to have him attend the meeting of creditors and represent the debtors during that proceeding. He has never, however, amended any of his Rule 2016(b) statements of compensation to reflect that his fees did not cover the standard service of representing the debtor(s) at the meeting of creditors,

---

1. The compensation agreed to be paid and paid by the debtors according to the Rule 2016(b) statements was $680 in Johnson, case 02–60812; $600 in Pasko, case 02–60897; $700 in Stange, case 02–60942; and $680 in Wanous, case 02–60835.

2. The meeting of creditors is also commonly referred to as the 341 meeting. In Chapter 7 proceedings, the appointed Chapter 7 trustee examines the debtor(s) regarding the potential consequences of filing bankruptcy, other chapters possibly available to the debtor(s) under the Bankruptcy Code, the effect of a Chapter 7 discharge, and the effect of reaffirmations of debts. *See* 11 U.S.C. § 341.

although his retainer agreements purportedly reflect the exclusion.[3]

Johnson came upon the idea to reduce his fees in this particular manner at the suggestion of two other area attorneys who likewise charge less if the debtors attend the 341 meeting on their own and without the benefit of counsel. One attorney, in an affidavit filed in support of Johnson in this proceeding, indicated that he never says or does anything at the meeting of creditors and therefore that paying him an additional $200 to appear at the meeting is a waste of his clients' money, and he so advises them.

Based on a complaint raised by a standing Chapter 7 trustee, and relying on 11 U.S.C. § 329(b), Fed. R. Bankr.P.2017, and Local Rule 9010–3(e), the United States Trustee (UST) brought a motion in these four cases seeking to have attorney Johnson return payment for his failure to attend and represent his debtor clients at the 341 meetings of creditors in violation of the terms of his own Rule 2016(b) statements. Johnson offered to amend his Rule 2016(b) statements but withheld from doing so on the UST's suggestion that the original misstatements constituted Rule 9011(b)[4] sanctionable violations and that amendment at this late hour would be insufficient to demonstrate that Johnson

did not file the initial compensation statements fraudulently.

Johnson explained his failure to amend the Rule 2016(b) statements at the time he filed them as a result of his ignorance of the contents of the Rule 2016(b) form: "Having an agreement with my clients, I never thought to cross off Subsection (c) of the Rule 2016(b) Statement. To be perfectly honest, I did not even know that representation was made in that form. That form is a boiler plate form, and I never knew that Subsection (c) indicated that the fee the debtors were paying me included my representation of them at the 341 meeting. As such, I have never, in all of the hundreds of bankruptcies that I have filed and not attended the 341 meeting, crossed off Subsection (c). However, my clients have known that I was not going to attend the 341 meeting."

The UST's position is that the Court should order a partial return of payment because the compensation exceeds the reasonable value of the services rendered by virtue of the fact that Johnson, according to the express terms of his Rule 2016(b) statements, charged his clients for his appearance and representation at the 341 meetings but then failed to attend the meetings. The UST also initially argued that Johnson should be sanctioned for violating Local Rule 9010–3(e) by failing to

---

**3.** Johnson provided the Court with an affidavit from some of his clients attesting to the fact that it was agreed and understood between client and counsel that counsel would not be representing client at the 341 meeting, that said agreement was a result of a reduced fee arrangement, and that the fees so arranged were considered reasonable by the client(s). However, no retainer agreements were produced as exhibits in support of his position.

**4.** Rule 9011(b) provides, in relevant part: Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, plead-

ing, written motion, or other paper, an attorney ... is certifying that to the best of [his or her] knowledge, information, and belief, formed after inquiry reasonable under the circumstances,—(1) it is not being presented for any improper purpose ...; (2) the claims, defenses, and other legal contentions therein are warranted by existing law ...; (3) the allegations and other factual contentions have evidentiary support ...; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information and belief. *See* Fed. R. Bankr.P. 9011(b).

appear at the 341 meeting and for filing misleading Rule 2016(b) statements.

The underlying question necessarily at issue under these facts is whether any amount of compensation can be determined reasonable where the debtors' attorney of record fails to attend the meeting of creditors and represent his debtor clients there. In other words, under Local Rule 9010–3(e), may an attorney discount compensation and contract away the service of attendance and representation at the 341 meetings? The answer is no. In this District, attendance and representation at the meeting of creditors is mandatory in most circumstances, and may not be avoided by discounting compensation and modifying the Rule 2016(b) statement.

## II. Discussion

Section 329(b) provides, *in relevant part:*

(b) If such compensation [5] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate if the property transferred—

(A) would have been property of the estate; or

(2) the entity that made such payment.

*See* 11 U.S.C. § 329(b); see also Fed. R. Bankr.P.2017.[6]

The UST contends that the compensation Johnson received in these cases exceeds the reasonable value of the services he provided because one of the services to be rendered as set forth in counsel's Rule 2016(b) statements was counsel's attendance and representation of the debtors at the meeting of creditors, and such service was not provided. Pursuant to Rule 2017 and § 329(b), according to the UST, the Court should determine the fees collected by Johnson in these cases to be excessive

---

**5.** The Code provides for "such compensation" in § 329(a): Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation. *See* 11 U.S.C. § 329(a). Rule 2016(b) provides, in relevant part: "Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code." *See* Fed. R. Bankr.P.2016(b).

**6.** Federal Rule 2017 provides:

(a) Payment or Transfer to Attorney Before Order for Relief. On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

(b) Payment or Transfer to Attorney After Order for Relief. On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to any attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case. *See* Fed. R. Bankr.P.2017.

and order the compensation returned to the extent excessive.

█ As a preliminary matter, there can be no doubt that under circumstances of a compensation agreement promising certain specific services in exchange for certain compensation, and in the event that the attorney neglected to provide all of the promised specific services, the fee collected under that compensation agreement would ordinarily be easily deemed excessive and an order for at least a partial return of payment issued, to an extent varying depending on the particulars of the given situation. In these cases, it is not adequately supported in the record that Johnson had a clear understanding with his clients as to what services his fee would and would not include. The Court has before it only the inaccurate Rule 2016(b) statements completed and filed by Johnson, and a couple of client affidavits. The Court does not have retainer agreements between Johnson and his clients.

On the other hand, the Court generally finds credible Johnson's assertion that his practice routinely did not include participation in 341 meetings, and that he based his fees on excluding his appearance and representation of his clients at the 341 meetings. There has not been a definitive showing that Johnson misled or intended to mislead his clients. He has, however, misled the Court routinely for a number of years. He should have amended his Rule 2016(b) statements from the outset, and the issue before the Court now would have been long decided. Instead, he has steadily misrepresented to the Court, in his Rule 2016(b) statements, that his services included attendance and counsel of his clients at 341 meetings.

█ Local Rule 9010–3(e) provides, *in pertinent part:*

(e) SUBSTITUTION; WITHDRAWAL.

(2) Withdrawal. An attorney in a bankruptcy case whose employment was subject to approval by the court, an attorney for any party in an adversary proceeding, or an attorney for a debtor in a chapter 7 or 13 case who wishes to withdraw without a substitution of attorney shall make a motion for leave to withdraw.

(4) Effect of Failure to Comply. Until a substitution of attorneys is filed or an order is entered allowing the original attorney to withdraw, the original attorney is the client's attorney of record and the original attorney shall represent the attorney's client in bringing and defending all matters or proceedings in the bankruptcy case other than adversary proceedings in which the original attorney has not yet made an appearance. Failure to receive advance payment or guarantee of attorney's fees is not grounds for failure to comply with this subsection.

*See* Local Rule 9010–3(e).

The UST contends that Local Rule 9010–3(e) clearly prohibits an attorney from unbundling services during the bankruptcy case, except for an adversary proceeding as expressly stated by the rule. "Local Rule 9010–3(e) contemplates that the entire bankruptcy case should be deemed as a single event of representation and that matters and proceedings during the case cannot be separated for the purpose of limiting representation." The UST's position is that "either an attorney is in the case," or the debtor is pro se.[7]

---

7. The UST notes the possibility of a debtor contracting with counsel only to prepare the

petition, schedules and statement of financial affairs, but proceeding entirely pro se

Accordingly, the UST urges the Court to adopt the position that the meeting of creditors is a "matter or proceeding in the bankruptcy case" that the attorney for the debtor must "bring or defend" in order to be in compliance with Local Rule 9010–3(e), unless the attorney files a substitution of attorney or obtains an order granting the attorney's withdrawal from further representation of the debtor.

Johnson argues that the provision of Local Rule 9010–3(e) that the original attorney of record "shall represent the attorney's client in bringing and defending all matters or proceedings in the bankruptcy case" does not really mean "all matters." On the contrary, according to Johnson, there is "nothing in the rule [that] indicates that the attorney must appear at a 341 meeting." The Court disagrees. The plain language provides that the Rule applies with regard to "all matters or proceedings in the bankruptcy case other than adversary proceedings."

It has long been the policy of this Court to require attorneys to strictly comply with Local Rule 9010–3(e), and sometimes to reprimand neglect and order sanctions for noncompliance. The most frequent example is when a represented debtor arrives alone, purportedly pro se, to defend a relief from stay motion under circumstances in which the lawyer has informed the debtor that defending the relief from stay motion requires additional compensation and immediate advance payment. On the con-

trary, unless counsel has obtained an order granting withdrawal, counsel is required to defend relief from stay actions. The 341 meeting of creditors, it seems to the Court, is likewise a core event in a bankruptcy case. Moreover, where in the relief from stay context it is conceivable that the additional fees may be warranted (though under the Rule payment or collectibility of extra fees is not a basis to abandon representation), it is difficult to fathom a basic, original retainer not including counsel's attendance and representation at the 341 meeting, *in every case.*

The facts and the issue in the *Bancroft* case are largely analogous. *See In re Bancroft,* 204 B.R. 548 (Bankr.C.D.Ill. 1997). The court in *Bancroft* concluded that an attorney practicing bankruptcy law cannot "apply his professional knowledge and skills without attending the first meeting of creditors." *Id.* at 551. The meeting of creditors exposes the debtor "to a potential plethora of legal hurdles ... [and] questioning by a professional trustee and attorneys representing creditors." *Id.* The debtor may be asked for information or to perform certain actions, in response to which the debtor, "acting out of ignorance or [believing] that there was no need for an attorney to represent him [at the 341 meeting], may say or do something to his or her detriment." *Id.* at 551–52. "Having initiated the process, an attorney must shepherd the client through it, to its conclusion." *Id.* at 552.[8] See also, *Bone v.*

---

throughout the bankruptcy case, from filing onward. This would be an arrangement that provided for absolutely no post-petition legal representation. The UST suggests that under this scenario, the attorney may provide only petition preparation services, avoid becoming counsel of record, and perhaps avoid application of Local Rule 9010–3(e). Because this is not the scenario presently before the Court, the Court declines to address it.

8. The court in *Bancroft* declined to address whether a client can waive certain representation because no client agreement was entered into in the case. *Bancroft,* 204 B.R. at 552. This Court, as previously noted, also has no retainer agreements before it and has only the misstated Rule 2016(b) statements completed by Johnson. However, Johnson did produce affidavits attesting to the agreement he had with his clients to exclude his attend-

*Judah (In re Josey),* 195 B.R. 511, 514 (Bankr.N.D.Ga.1996) ("Attorneys for debtors cannot adequately represent their clients if they fail to appear at the § 341 meeting.")

The Idaho bankruptcy court similarly decided in *Castorena* that attendance at the § 341 meeting, among other things, is a "fundamental and core obligation" necessarily imposed upon the attorney representing a debtor in bankruptcy, and that it would be "exceedingly difficult" to show that any such obligations were properly contracted away. *See In re Castorena,* 270 B.R. 504, 530 (Bankr.D.Idaho 2001). "[W]hen accepting an engagement to represent a debtor in relation to a bankruptcy proceeding, an attorney must be prepared to assist that debtor through the normal, ordinary and fundamental aspects of the process." *Id.* The Court in *Castorena* made a lengthy list of such basic matters. *Id.* Likewise, our Local Rule 9010–3(e) plainly seeks to ensure that bankruptcy counsel does not fail to provide fundamental services or otherwise unbundle the core package of ordinary legal representation reasonably anticipated in every bankruptcy case.

As the UST pointed out: "Appearance at Section 341 meetings is important for debtors and is required under Section 343. The debtors are put under oath, and testimony is recorded. The meeting, for most debtors, is the only direct contact that the debtors will have with the trustee and with the bankruptcy system. The trustees request information [from the debtor] at the meeting for administration of the estate." While the 341 meeting may, in some very basic no-asset cases, admittedly be an event of small consequence, the meeting is an important tool for identifying possible factual matters and attendant legal issues

that may indeed be of major significance to the debtor.

Interestingly, Johnson relies upon the decision in *Vilt,* out of the Bankruptcy Court for the Northern District of Illinois, Eastern Division, and upon the decision in *Stewart,* out of the Bankruptcy Court for the Northern District of Ohio, for the proposition that the word "shall" in § 343 of the Code did not make attendance at 341 meetings mandatory under all circumstances, and that interpreting § 343 otherwise would defeat the Code's goal of enabling a fresh start for debtors. To this argument Johnson characterizes his discounted fee arrangement as a matter of debtor necessity: "I could not attend the 341 meetings because the debtors could not afford to pay me the additional sums required for my attendance at the 341 meetings."

*In re Vilt,* 56 B.R. 723 (Bankr.N.D.Ill. 1986), and *In re Stewart,* 14 B.R. 959 (Bankr.N.D.Ohio 1981), however, merely provide for the extraordinary situations in which a debtor, not counsel, may be prevented from attending the meeting of creditors, such as for example due to the debtor's incarceration or extremely ill health. Those cases interpreted a necessary exception in the mandatory language of § 343 enabling an alternative means of appearance or a substitute appearance by someone closely related to the debtor and the debtor's financial affairs, under very limited circumstances, that is, when a debtor's inability to appear at the meeting of creditors is beyond the debtor's control. *Vilt* and *Stewart* have little significance to the bankruptcy attorney's obligation to appear at the meeting of creditors in representation of the debtor. A debtor's financial inability to pay the attorney beyond a basic retainer to secure the attorney's attendance at the meeting of creditors is not

---

ance at the 341 meetings from the legal services promised.

the kind of extraordinary situation and not the right application of the exceptions set forth in *Vilt* and *Stewart*.

Johnson also claims [9] that as a matter of public policy it is inherently unfair to require bankruptcy attorneys to represent debtors at the meeting of creditors because the added cost to the debtor for that legal service may increase the overall cost of filing to the debtor so as to preclude filing at all. "[W]hen the attendance of the 341 meetings is weighed against the opportunity to even file a bankruptcy, I believe the debtor's ability to file a bankruptcy far outweighs my attendance at the 341 meeting. In other words, if a debtor cannot afford to file bankruptcy if I attend the 341 meeting, then I would rather not attend the 341 meeting so that the debtor can get a fresh start by filing bankruptcy."

This argument is without merit. Many debtors file bankruptcy and proceed entirely pro se, and may even apply to pay the filing fee in installments. The Court is well aware of the benefit conferred by most attorneys in most cases, but financial difficulty or desperation is not a bar to filing and obtaining relief under the Bankruptcy Code. The pro se debtor represents him or herself at the 341 meeting. More problematic, as the court explained in *Castorena*, is the condition of the debtor who enjoyed the benefit of some counsel but must proceed through other parts of the bankruptcy case unaided. "To send a debtor into a bankruptcy pro se, on the theory that he has had 'enough' advice and counseling in the document preparation stage to safely represent himself, is except in the extraordinary case so fundamentally unfair as to amount to misrepresentation."

*Castorena*, 270 B.R. at 529. "[I]t requires a leap to believe that" no problems will arise and no further counsel be helpful or required post-petition. *Id.* at 530.

One jurisdiction standing readily apart on the issue of mandatory counsel attendance at 341 meetings is Colorado. In 1999, the Bankruptcy Court for the District of Colorado held that "[e]very debtor must attend a first meeting of creditors under Section 341 and it is expected that the debtor will then be represented by her attorney." *See Schofield v. United States Trustee (In re Jones)*, 236 B.R. 38, 41 (D.Colo.1999). "Thus, post-petition services are required in Chapter 7 cases." *Id.* The following year the same court held:

> The necessity and benefit of attendance by a debtor's attorney at the Section 341 meeting depends on the nature and circumstances of each case. Attendance may be critical in some cases, particularly those with complicated facts or where the debtor is unfamiliar with financial matters. It may be of benefit in some cases and relatively unimportant in other cases. Some pro se debtors move through the bankruptcy process successfully without legal assistance at the Section 341 meeting or otherwise. The necessity for the attorney's attendance at the Section 341 meeting should be evaluated in light of the needs of the client, the agreed services to be provided, the circumstances of the case and the standard of practice in the community.

*See In re Merriam*, 250 B.R. 724, 736 (Bankr.D.Colo.2000).

This Court agrees with that description of the nature of the 341 meeting and its

---

9. Johnson also suggests that he has been singled out, and that it is common practice, and in fact common and accepted practice, for bankruptcy attorneys to represent debtors in bankruptcy subject to the exclusion of representing them at the 341 meetings. This is totally unsupported by the record. One or two attorneys does not a common practice in this District make.

variable significance. However, this Court finds that it is that very myriad potential that is good cause for requiring counsel of record to appear at 341 meetings generally without exception. In any event, the court in *Merriam* relied on an administrative order issued by the Federal District Court for the District of Colorado adopting a state rule specifically allowing the unbundling of services and providing a means for counsel to limit representation in bankruptcy court: "Amended Administrative Order 1999–6 ... states that Colo. R. Prof'l Conduct 1.2(c) (and other provisions of Colorado law allowing unbundling of legal services) does not apply in adversary proceedings or matters governed by Fed. R. Bankr.P. 9014 but, by negative implication, limitation or unbundling of legal services is authorized in the other phases of a bankruptcy case." *Id.* at 730. We have no such authority in the District of Minnesota; our Local Rule 9010–3 is in direct contrast by its plain terms; and the standard practice in this community is regular attendance by counsel at the meeting of creditors.

■ In fact, Rule 1.2(b) of the Minnesota Rules of Professional Conduct, which provides that "[a] lawyer may limit the objectives of the representation if the client consents after consultation," contemplates that applicable court rules supercede the ability of attorney and client to restrict the terms of representation. "The client has the ultimate authority to determine the purposes to be services by legal representation, *within the limits imposed by the law and the lawyer's professional obligations. Within those limits,* a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives." *See* 52 M.S.A. Minn. Rules. Prof. Conduct, Comment on Rule 1.2 (1985) (emphasis added). "Law defining the lawyer's scope of authority in litigation varies among jurisdictions." *Id.* "An agreement concerning the scope of representation must accord with the Rules of Professional Conduct *and other law.*" *Id.* (emphasis added). Accordingly, in this District, Local Rule 9010–3(e) controls.

Other jurisdictions also appear to favor mandatory appearance by counsel of record at 341 meetings. As reported in a 1991 decision, the Bankruptcy Court for the Eastern District of Virginia had a local rule which provided for "dismissal of a bankruptcy case after notice to the debtor by the clerk where the debtor *or debtor's counsel* have failed to appear at the § 341 creditors' meeting." *See Owings v. Doniff (In re Doniff),* 133 B.R. 351, 353 n. 2 (Bankr.E.D.Va.1991) (emphasis added). See also, *In re Hailey,* 21 B.R. 453, 454 (Bankr.N.D.Ga.1982) (fee forfeited for attorney's failure to attend the 341 meeting as required by the Code of Professional Responsibility and the Bankruptcy Rules and orders of the court).

In *Hale v. United States Trustee (In re Basham ),* 208 B.R. 926, 932 (9th Cir. BAP 1997), aff'd 152 F.3d 924, 1998 WL 382843 (9th Cir.1998) (table), the Ninth Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's decision ordering the return of payments as excessive for, among other reasons, the attorney's failure to represent the debtors at the 341 meeting because the debtors did not pay additional compensation. Affirming, the BAP explained that "the bankruptcy court expressed grave concern" over the attorney's practice of filing "petitions, schedules, and statement of affairs and then leaving [debtors] to represent themselves." *Id.* The attorney "had an obligation to either handle the cases from beginning to end and perform the services for whatever amounts the clients could afford, or refer the cases to another attorney." *Id.* at 932–33.

### III. Conclusion

Johnson insists that his "system was not implemented for anyone's benefit other than the debtors," that it is a question of assuring debtors access to bankruptcy relief, that a debtor's inability to pay his bankruptcy counsel enough to fund the attorney's attendance and representation of the debtor at the meeting of creditors is a situation beyond the debtor's control, and that bankruptcy courts are, after all, courts of equity, which must be flexible and design a system more convenient and less costly to debtors.

 The Court is not persuaded. The Bankruptcy Court is perhaps a unique forum in that it is in fact quite accessible to the pro se party, both as a debtor and as a plaintiff in adversary proceedings as well. In any event, "[a]ttorneys have ethical obligations to their clients regardless of the economic pressures which might exist." *Castorena*, 270 B.R. at 530–31. "The balance cannot be tipped toward the interest in collecting fees to the detriment of the client's right to thorough and competent representation." *Id.* Local Rule 9010–3(e) maintains this balance. In *Bancroft*, the court concluded that "[t]he answer to the ... question of whether there is a minimum level of representation in bankruptcy to claim a professional fee is clearly yes." *Bancroft*, 204 B.R. at 550.[10] This Court agrees, and concludes that Local Rule 9010–3(e) assures a minimum level of representation to debtors with counsel throughout their main bankruptcy cases regardless of debtors' ability to pay or guarantee payment of additional compensation.

 The UST originally argued that Johnson's fees in these cases should be reduced to $250 for excessiveness and as a sanction for filing false Rule 2016(b) statements and as a sanction for failing to represent his clients as agreed between them. However, at the hearing on this matter the UST largely withdrew his sanctions request. The Court has decided on a remedy based exclusively on the excessiveness of the fees for Johnson's failure to represent his clients at the 341 meetings.

Johnson performs all aspects of his bankruptcy cases himself, without the assistance of a paralegal or legal secretary. He spends between approximately nine and 14 hours on most cases. His usual hourly rate is purportedly $125.00, although that seems to be in contrast to the fees charged in the above captioned cases which appear to be reduced price, bundled packages for complete bankruptcy services. In any event, the Court will order the return of payment in the amount of $125.00 in each case, reflecting the likely hour Johnson should have spent in attendance at each meeting of creditors, and the minimum amount to which his fees are excessive.

### IV. Disposition

For the reasons set forth above, IT IS HEREBY ORDERED:

1. Samuel Johnson is ordered to return payments, within 20 days of the date of this Order, in the amount of $125 in each of the above captioned cases;

2. Johnson's request for attorney fees in defending this matter is denied;

3. The returned payments should be made payable to the bankruptcy estates for each of the cases; and

4. This Order is without prejudice to the debtors' rights, if any, to amend

---

**10.** "That conclusion is drawn from the Bankruptcy Code, which, by Sections 327 to 330, draws a distinction between professional fees and § 110 which governs a 'bankruptcy petition preparer.'" *Bancroft*, 204 B.R. at 550.

their schedules and claim the returned payments exempt.