**In re Danielle Christine MERRIAM, a/k/a Danielle C. Glidewell, a/k/a Danielle C. Tucker, Debtor.**

**No. 99–23020 MSK.**

United States Bankruptcy Court, D. Colorado.

June 21, 2000.

William E. Zurinskas, Boulder, CO, pro se.

Leo Weiss, Denver, CO, for United States Trustee's Office.

## MEMORANDUM OPINION AND ORDER

MARCIA S. KRIEGER, Chief Judge.

THIS MATTER comes before the Court on the United States Trustee's Motion to

Examine Fees Charged in the Case (Motion) and the Response of Debtor's Counsel, William E. Zurinskas, Esq. Oral argument and offers of proof were made by Leo Weiss on behalf of the United States Trustee's Office and by William Zurinskas, appearing *pro se.* Having considered the Motion, Response, offers of proof and oral argument, the Court makes the following findings and conclusions:

## I. JURISDICTION

This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334(a) and (e). Because it concerns general administration of the bankruptcy estate, this is a core matter. 28 U.S.C. § 157(b)(2)(A).

## II. ISSUES PRESENTED

This is a Chapter 7 case in which the U.S. Trustee seeks disgorgement of legal fees pursuant to 11 U.S.C. § 329(b).[1] The U.S. Trustee argues that Mr. Zurinskas' $399.00 fee is excessive due to his failure to: 1) sign the Debtor's petition; and 2) attend the Debtor's first meeting of creditors (Section 341 meeting). According to the U.S. Trustee, Mr. Zurinskas' failure to sign the petition he prepared for the Debtor constitutes impermissible "ghostwriting" violative of Fed.R.Bankr.P. 9011, case law in this district and Administrative Order 1999–6 of the United States District Court for the District of Colorado (Administrative Order 1999–6). The U.S. Trustee further argues that Mr. Zurinskas was required to attend the Debtor's Section 341 meeting and that his failure to do so warrants sanction by fee reduction.

Mr. Zurinskas admits that he failed to sign the petition and attend the Debtor's Section 341 meeting. He did so because such services exceeded those authorized by his client. He contends that his fee for pre-petition services is reasonable and that it should not be reduced or disgorged under § 329(b) because his representation of the Debtor was properly limited in accor-

dance with Colo. R. Prof'l Conduct 1.2(c). He urges the Court to interpret Fed.R.Bankr.P. 9011, case law addressing "ghostwriting" of pleadings by attorneys for *pro se* litigants and Administrative Order 1999–6 to allow limited or unbundling of representation of debtors in bankruptcy cases. Unbundling or limited representation of debtors in bankruptcy cases is necessary, he contends, to provide legal representation at an affordable cost.

Although these arguments raise important questions about an attorney's obligations when representing a debtor in a bankruptcy case, this controversy focuses upon 11 U.S.C. § 329(b). Pursuant to § 329(b), excessive fees paid to counsel for a debtor may be reduced or recouped. The issues to be resolved are: 1) whether the fee paid to Mr. Zurinskas for prepetition services was excessive; and 2) whether Mr. Zurinskas' limitation of services otherwise renders his pre-petition fee excessive.

## III. UNDISPUTED FACTS

At the time of oral argument, the parties were given an opportunity to request an evidentiary hearing. Neither did. Instead, both parties presented legal argument laced with factual references, which the Court treats as an offer of proof. Taken as true, the following facts are undisputed:

1. Mr. Zurinskas is an attorney licensed to practice in Colorado and admitted to practice before this Court. He has represented many debtors in consumer bankruptcy cases, and has limited the scope of his representation in approximately 100–200 other cases. No challenge has been made to his fees in other cases.

2. Mr. Zurinskas consulted with the Debtor to assess her legal situation and provide bankruptcy advice. Perceiving this to be a simple consumer case, he offered the Debtor two flat fee alterna-

---

1. Except as specifically noted, all future references to statutory provisions are to United States Code, Title 11, known as the Bankruptcy Code.

tives. For $399.00 plus fees for three additional hours,[2] he offered to provide pre-petition advice, prepare and file the petition, schedules and statement of affairs and other required documentation and attend the Section 341 meeting. Alternatively, for a flat fee of $399.00, he offered to provide the same pre-petition services but not attend the Section 341 meeting. Under both scenarios, Mr. Zurinskas agreed to consult with the Debtor prior to the Section 341 meeting, respond to the Debtor's pre- and post-petition telephone inquiries, review proposed reaffirmation agreements and, for an hourly fee, provide representation for specific post-petition matters. Mr. Zurinskas explained to the Debtor what the Section 341 meeting is, how it is conducted and identified the risks attendant to appearing without counsel. The Debtor chose limited representation without Mr. Zurinskas' appearance at the Section 341 meeting for the flat fee of $399.00.

3. Mr. Zurinskas prepared and filed the Debtor's petition, schedules, statement of affairs and creditors' matrix on October 18, 1999. The petition was signed by the Debtor, only, and nothing on the petition, schedules or statement of affairs stated that Mr. Zurinskas had prepared them. The Debtor responded to question No. 9 on the statement of affairs stating that she had paid Mr. Zurinskas $399.00 pre-petition. Approximately two weeks after filing the petition, Mr. Zurinskas filed the attorney fee disclosure required by 11 U.S.C. § 329(a) and Fed.R.Bankr.P. 2016(b). It stated only that he had been paid $399.00 pre-petition and that no further fees were owed.

4. The Debtor appeared at the scheduled Section 341 meeting without Mr. Zurinskas. The Debtor has since received her discharge and the Chapter 7 Trustee has filed a report stating that the estate has no assets and requesting that the case be closed.

■ 5. At the time of the bankruptcy filing, Administrative Order 1999–6 was in effect, however it was amended shortly after the oral argument in this matter.[3] Prior to its amendment, Administrative Order 1999–6 stated that COLO. R. PROF'L CONDUCT 1.2(c) and other provisions of Colorado law authorizing the limitation (unbundling) of attorney services are not applicable in matters pending before the United States District Court for the District of Colorado. The order did not specifically refer to the Bankruptcy Court, however, by definition the Bankruptcy Court is a unit of the District Court. 28 U.S.C. § 151; *Mountain America Credit Union v. Skinner,* 917 F.2d 444, 449 n. 6 (10th Cir.1990).

6. The Amended Administrative Order 1999–6 (Amended Order) specifically addresses matters pending before the Bankruptcy Court. It states that COLO. R. PROF'L CONDUCT 1.2(c) (and other provisions of Colorado law allowing unbundling of legal services) does not apply in adversary proceedings or matters governed by Fed.R.Bankr.P. 9014 but, by negative implication, limitation or unbundling of legal services is authorized in the other phases of a bankruptcy case. It further requires that any limitation in legal services provided to a debtor must be disclosed in the attorney fee disclosure required by 11 U.S.C. § 329(a) and Fed.R.Bankr.P. 2016(b).

## VI. ANALYSIS

Because the U.S. Trustee presented no evidence establishing that the $399.00 paid to Mr. Zurinskas is excessive for the pre-petition services he provided, the first issue is resolved. The remaining issue is whether Mr. Zurinskas' failure to sign the

---

2. Mr. Zurinskas estimates that it takes approximately three hours to travel between his Boulder office and the courthouse to attend the Section 341 meeting.

3. Amended Administrative Order 1999–6 was issued on April 10, 2000.

petition or attend the Section 341 meeting makes his fee excessive.

Resolution of this issue requires the Court to determine whether Mr. Zurinskas had a duty to sign the Debtor's petition or attend the Section 341 meeting. If so, the Court must determine whether breach of such duty makes his fee excessive and therefore subject to reduction or recoupment under § 329(b).

Before addressing Mr. Zurinskas' alleged defaults, it is helpful to reflect upon the scope and purpose of § 329(b). Section 329 concerns the relationship between a debtor and the debtor's attorney, particularly the fees charged by the attorney for bankruptcy advice or representation. Section 329(a) requires all attorneys who represent a debtor in or in connection with a bankruptcy case[4] to file a written disclosure of the compensation paid or agreed to be paid for such services.[5] Section 329(b) authorizes the bankruptcy court to determine whether the fee is reasonable and recover any excessive fees. It provides that:

4. Section 329(a) applies to any payment to an attorney during the year preceding the bankruptcy filing.

5. This provision is implemented by Fed. R.Bankr.P. 2016(b) which provides:
 **(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor.** Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

6. The review process is implemented by Fed. R.Bankr.P. 2017 which provides:

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
 (1) the estate, if the property transferred—
 (A) would have been property of the estate; or
 (B) was to be paid by or on behalf of the debtor under a plan under Chapter 11, 12, or 13 of this title; or
 (2) the entity that made such payment.[6]

The purpose of § 329 is to protect debtors and the estate. Section 329(b) was enacted in response to the concern that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and [therefore] should be subject to careful scrutiny." *In re Land,* 116 B.R. 798, 804 (D.Colo.1990), *aff'd* 943 F.2d 1265 (10th Cir.1991), *quoting* H.R.REP. No. 595, 95th

 **(a) Payment or Transfer to Attorney Before Order for Relief.** On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.
 **(b) Payment or Transfer to Attorney After Order for Relief.** On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

CONG., 1st Sess. 329 (1977), U.S.Code Cong. & Admin.News pp. 5963, 6285 and S.REP. No. 989, 95th Cong., 2d Sess. 39–40 (1978), U.S.Code Cong. & Admin.News pp. 5787, 5825–5826. To fulfill this purpose, a court's determination of the reasonableness of compensation under § 329 requires a holistic review of the attorney/debtor relationship. *In re Martin*, 197 B.R. 120, 125 (Bankr.D.Colo.1996). The agreed upon compensation of a debtor's attorney may be excessive for a variety of reasons including, but not limited to, the size of the fee, counsel's failure to file the attorney fee disclosure required by § 329(a) or conduct by the attorney which diminishes the value of the legal services.[7] However, courts are generally reluctant to reduce or recoup attorney fees unless the attorney has breached a duty owed to or benefitting the debtor, and then fees are reduced only to the extent of the demonstrated harm to the debtor or the estate.[8]

### A. Failure to Sign the Debtor's Petition.

The U.S. Trustee's first argument is that Mr. Zurinskas' fee is excessive given his failure to sign the Debtor's petition, which violated Fed.R.Bankr.P. 9011, Administrative Order 1999–6 and constituted impermissible "ghostwriting". Mr. Zurinskas responds that his failure to sign the Petition was justified because the scope of his representation had been limited in accordance with COLO. R. PROF'L CONDUCT 1.2(c) and that to sign the petition would have resulted in his entry of a general appearance in the case.

It is not necessary to resolve whether limited representation was permissible at the time this case was filed because regardless of the scope of Mr. Zurinskas' representation, he was obligated to sign the petition by Fed.R.Bankr.P. 9011(a) which provides:

> [e]very petition ... shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature

7. *See Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000 (5th Cir.1995) (attorney fees excessive given services rendered and failure to disclose contingent fee arrangement); *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir.1993) (attorney who fails to comply with the disclosure requirements of section 329 forfeits any right to compensation); *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 849 (10th Cir. BAP 1997) (disgorgement of the pre-petition retainer and denial of all fees upheld where retainer was not mentioned in the disclosure statement); *In re Morrison*, 231 B.R. 754 (Bankr.W.D.Mo. 1999) (attorney fees excessive given delays, late filings, non-appearance for hearings, failure to address the merits of motions, and unreasonably high hourly rate); *In re Bell*, 212 B.R. 654 (Bankr.E.D.Cal.1997) (attorney fees excessive given failure to comply with Fed.R.Bankr.P. 2016 and failure to disclose conflict of interest); *Geraci v. Hopper (In re Day)*, 213 B.R. 145 (C.D.Ill.1997) (attorney fees excessive given poor services rendered); *In re Dennis*, 164 B.R. 318 (Bankr.D.Ariz. 1994) (attorney fees excessive where little services rendered to client and failure to disclose compensation-sharing arrangement); *Quiat v. Berger (In re Vann)*, 136 B.R. 863 (D.Colo. 1992) (services provided by attorney to debtor were valueless because attorney also represented a party with a conflicting interest), *aff'd in unpublished decision* 986 F.2d 1431 (10th Cir.1993); *Land v. First Nat'l Bank (In re Land)*, 116 B.R. 798 (D.Colo.1990) (attorney fees required to be disgorged where Fed. R.Bankr.P. 2016 disclosure filed years late and deficient when filed), *aff'd* 943 F.2d 1265 (10th Cir.1991).

8. *See Quiat v. Berger (In re Vann)*, 136 B.R. 863, 870 (D.Colo.1992) (while the court may deny all fees where there is an actual conflict of interest, the court may allow partial fees if the need for attorney fees is outweighed by the equities of the case), *aff'd in an unpublished opinion* 986 F.2d 1431 (10th Cir.1993); *In re Smith*, 24 B.R. 266 (Bankr.D.D.C.1982) (court could not determine how much the attorney's ethical violations diminished the value of services performed for multiple debts, but attorney fees excessive given attorney's lack of competency and failure to file attorney disclosures).

is corrected promptly after being called to the attention of the attorney or party.

■■■■■ The requirements of Fed. R.Bankr.P. 9011 follow those of Fed. R.Civ.P. 11 applicable in federal civil litigation. The required signature is a certification that, according to the best of the signer's knowledge, information and belief, formed after reasonable inquiry, the pleading is not being presented for an improper purpose, its legal contentions are warranted by existing law and the factual allegations have evidentiary support. Fed. R.Bankr.P. 9011(b); Fed.R.Civ.P. 11(b). The signature determines who is responsible for the accuracy of the allegations in the pleading. In some cases, the signature also determines the standard to be applied in determining the allegations in the pleading. Pleadings prepared by lay persons without counsel (*pro se* pleadings) are interpreted more liberally than those prepared by counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). For example, claims asserted by a *pro se* party cannot be dismissed for legal insufficiency unless it appears that the claimant can prove no set of facts which would entitle the claimant to relief. *Haines v. Kerner, supra,* at 520, 92 S.Ct. 594; *Swoboda v. Dubach,* 992 F.2d 286, 289 (10th Cir.1993). *Pro se* pleadings are also granted a degree of indulgence under Fed.R.Civ.P. 11 not extended to those drafted by attorneys. *See Laremont–Lopez v. Southeastern Tidewater Opportunity Center,* 968 F.Supp. 1075, 1078 (E.D.Va.1997); *Harmon v. O'Keefe,* 149 F.R.D. 114, 116 (E.D.Va.1993).

■■■■■ While it is true that neither Fed.R.Bankr.P. 9011, nor its counterpart Fed.R.Civ.P. 11, specifically address the situation where an attorney prepares pleadings for a party who will otherwise appear unrepresented in the litigation, many courts in this district, and elsewhere, disapprove of the practice known as ghostwriting. *See Ellis v. Maine,* 448 F.2d 1325, 1328 (1st Cir.1971); *Ricotta v. Cali-*

*fornia,* 4 F.Supp.2d 961, 987 (S.D.Cal. 1998); *Laremont–Lopez v. Southeastern Tidewater Opportunity Center,* 968 F.Supp. 1075, 1077–78 (E.D.Va.1997); *Somerset Pharmaceuticals, Inc. v. Kimball,* 168 F.R.D. 69, 72 (M.D.Fla.1996); *Johnson v. Board of County Commissioners,* 868 F.Supp. 1226, 1231 (D.Colo.1994), *aff'd in part and disapproved in part,* 85 F.3d 489 (10th Cir.1996). These opinions highlight the duties of attorneys, as officers of the court, to be candid and honest with the tribunal before which they appear. When an attorney has the client sign a pleading that the attorney prepared, the attorney creates the impression that the client drafted the pleading. This violates both Rule 11 and the duty of honesty and candor to the court. In addition, the situation "places the opposing party at an unfair disadvantage" and "interferes with the efficient administration of justice." *Laremont–Lopez,* 968 F.Supp. at 1078. According to these decisions, ghostwriting is sanctionable under Rule 11 and as contempt of court.

■■■■■ The reasoning of these opinions is also applicable in a bankruptcy case. Fed.R.Bankr.P. 9011 requires that a bankruptcy petition be signed either by an "attorney of record" or an "unrepresented party." The purpose of the signature is essentially the same as in civil litigation— to certify the accuracy and legal sufficiency of the allegations made. Analogous to a complaint, the debtor's petition initiates a bankruptcy case. It contains legal allegations that a debtor is eligible for bankruptcy relief, specifies the chapter under which relief is requested and contains factual allegations as to the debtor's name and aliases, addresses, Social Security Number, prior cases and related cases. Such information may be relevant to the determination of a debtor's good or bad faith in filing, eligibility under a particular chapter of the bankruptcy code, proper venue and entitlement to discharge. The importance of such information is underscored by the requirement that the debtor sign the peti-

tion under penalty of perjury.[9] The official form petition also contains signature blocks for debtor's attorney or for a petition preparer. The signature block for the attorney satisfies the provisions of Rule 9011, while that for the petition preparer satisfies 11 U.S.C. § 110.[10]

 The failure of an attorney to sign a petition he or she prepares potentially misleads the Court, the trustee and creditors, and distorts the bankruptcy process.[11] From a superficial perspective, there is no apparent justification for excusing an attorney who prepares a petition from signing it when a petition preparer is required to do so.[12] But regardless of whether it is an attorney or petition preparer who prepares the petition, if such person does not sign it the Court, trustee and creditors do not know who is responsible for its contents. Should the Court hold a debtor responsible for the petition's accuracy and sufficiency if it was prepared by an attorney? Can such debtor assert that the contents of the petition result from advice of counsel in defense of a motion to dismiss or a challenge to discharge for false oath?

 Mr. Zurinskas chose not to sign the petition because he did not want to enter a general appearance in this bankruptcy case by the customary practice of signing and filing a pleading. Limited appearances are not authorized in matters before the District Court,[13] but limitation of the services provided by debtor's counsel in a bankruptcy case is quite common. Contrary to Mr. Zurinskas' assumption, however, Rule 9011 and Rule 11 do not govern entries of appearance by counsel.[14] Neither makes reference to entries of appearance by attorneys or otherwise. The sole purpose of these rules is to assure the bona fides of a pleading's allegations.

 Indeed, such purpose is integral to the unbundling of legal services in litigation matters permitted by Colorado ethi-

9. Fed.R.Bankr.P. 1007(b) requires that the appropriate official forms be used. See Official Form 1 (Voluntary Petition) requiring that this form be signed by the debtor under penalty of perjury.

10. Section 110 requires a petition preparer to sign a debtor's petition, schedules and statement of affairs; failure to do so may result in imposition of fines, imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

11. It could be argued that listing of an attorney in the statement of affairs as having received a pre-petition payment for legal services or filing the attorney disclosure required by Fed.R.Bankr.P. 2016 alerts the Court and parties in interest that the debtor consulted with an attorney pre-petition. While this may be true, such disclosures do not substitute for the signature that certifies that the petition was not filed for improper purposes and that there was a reasonable investigation of the information it contains.

12. Indeed, it may be more important that petition preparers and attorneys who limit their representation sign the petition precisely because they will not be representing the debtor throughout the case. Errors and omissions in petitions, schedules and statements of affairs are relatively common and can be corrected by amendment. When an attorney represents a debtor post-petition this happens routinely. However, if the preparer of the petition and other documents is not involved in the case, he or she may have no notice of the need for amendment. The debtor may know the preparer's identity, but may not recognize that amendments are necessary or may not want to pay for such amendments. Disclosure of the preparer's identity allows the U.S. Trustee, interim trustee or creditor to obtain clarifying or correcting disclosures.

13. See Johnson v. Board of County Commissioners, 868 F.Supp. 1226, 1229 (D.Colo. 1994).

14. The manner of entering an appearance is regulated by local rule. See 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3154 (2d ed.1997); 28 U.S.C. § 1654. In this district, the customary practice is to give notice of an attorney's entry of appearance by signing and filing a pleading. D.C.COLO. LR 83.5B. In bankruptcy matters, Fed.R.Bankr.P. Rule 9010(b) requires the filing of a "notice of appearance" unless otherwise noted in the record. L.B.R. 910(d) anticipates the filing of a general entry of appearance by attorneys representing creditors and other parties in interest, but offers no guidance as to how debtor's counsel enters his or her appearance.

cal rules. Colo. R. Prof'l Conduct 1.2(c) allows an attorney and informed client to limit the attorney's services in litigation matters with the explicit caveat that the attorney will comply with Colo.R.Civ.P. 11(b).[15] Colo.R.Civ.P. 11(b) (the state counterpart of Fed.R.Civ.P. 11 and Fed.R.Bankr.P. 9011) requires that pleadings drafted by an attorney for a party who otherwise will appear *pro se* must include the drafting attorney's name, address, telephone number and registration number, and that the attorney must certify that the pleading is: "(1) well-grounded in fact …; (2) is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and (3) is not interposed of any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Given the clear intent of Colo. R. Prof'l Conduct Rule 1.2(c) that attorneys continue to comply with the signature and certification requirements of Colo. R.Civ.P. 11(b) in circumstances of limited representation, Mr. Zurinskas' suggestion that limited representation excused his compliance with Fed.R.Bankr.P. 9011 is disingenuous.

Mr Zurinskas also argues that he was excused from signing the petition because the language of Fed.R.Bankr.P. 9011 is ambiguous. It requires the signature of an "attorney of record" rather than an "attorney who represents a party" as required by Colo.R.Civ.P. 11(a). Since Mr. Zurinskas did not intend to act as the "attorney of record" for this case, he reasoned that he was excused from signing the petition.

 Admittedly, there can be varying interpretations of the term "attorney of record", and the Court appreciates Mr. Zurinskas' fear that by signing the petition he would be required to perform services for which the Debtor did not want to pay.

But a narrow interpretation of the phrase "attorney of record" ignores the purpose of Rule 9011 and the linkage between unbundling of legal services and compliance with Colo.R.Civ.P. 11(b) as envisioned in Colorado's ethical rules. Rule 9011 requires either an "attorney of record" or "[a] party who is not represented by an attorney" to sign the petition. Here, the Debtor was represented by Mr. Zurinskas in the drafting of her petition, schedules and statement of affairs. She was also represented after the filing as to certain specified matters. She was not by any definition a "party who is not represented by an attorney." As between the Debtor and Mr. Zurinskas, Mr. Zurinskas should have signed the petition because he drafted it and is therefore responsible for certifying its compliance with Rule 9011.

 How can an attorney for a debtor both comply with Fed.R.Bankr.P. 9011 and limit the services to be rendered in the bankruptcy case? At the time that Mr. Zurinskas initiated this case, Administrative Order 1999–6 did not permit unbundling of legal services even though Colorado law deemed such practice to be ethical. Mr. Zurinskas' assumption that if he complied with the Colorado Rules of Professional Conduct he did not have to comply with Fed.R.Bankr.P. 9011 or with Administrative Order 1999–6 was simply incorrect. Although the State of Colorado licenses attorneys and specifies the minimal professional standards required to maintain a license to practice law, the procedures applicable in federal courts are promulgated by Congress and supplemented by local rules and administrative orders pursuant to the federal court's inherent power to control and supervise proceedings before it. *See United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986). Although a practice may be ethical according to state standards, it may not be

---

15. Colo. R. Prof'l Conduct 1.2(c) provides that:

(c) [a] lawyer may limit the scope or objectives, or both, of the representation if the

client consents after consultation. A lawyer may provide limited representation to *pro se* parties as permitted by C.R.C.P. 11(b) and C.R.C.P. 311(b).

permitted in the United States District Court or this Court. Unfortunately inconsistencies between procedures used in state and federal courts give rise to confusion and inconvenience, but attorneys nevertheless must comply with the orders and rules applicable in the court before which they practice.

Happily the conundrum faced by Mr. Zurinskas is, at least partially, resolved by Amended Administrative Order 1999–6. A debtor's counsel may limit the scope of services to be provided in the main bankruptcy case but must specify the limitation in the Rule 2016 disclosure. Entries of appearance by other parties in the main case continue to be governed by Fed. R.Bankr.P. 9010(b) and L.B.R. 910. Legal representation in adversary proceedings and contested matters may not be limited and notice of an attorney's entry of appearance can be accomplished either by the filing of a document entitled "Notice of Entry of Appearance" or the customary practice of signing and filing a pleading on a party's behalf.

The conclusion that Mr. Zurinskas was obligated to sign the petition does not, however, resolve the question of whether his pre-petition fees should be reduced and recouped under § 329(b). For reduction or recoupment to be appropriate, such duty must be integral to his relationship with the Debtor and his default must have had an adverse impact upon the Debtor or the estate.

At this juncture, it is helpful to distinguish between the duties owed by an attorney to a client and those owed to a court. The attorney-client relationship is essentially contractual with outward boundaries set by the attorney's ethical obligations.[16] The duties owed to a client arise at the time of retention and may vary based upon the needs, desires, resources of the client and the expertise of and compensation required by the attorney. The freedom of the attorney and client to negotiate terms may not be as great as in other business relationships, but the evolution in ethical rules over recent years has been toward greater client input and control. The provisions of COLO. R. PROF'L CONDUCT 1.2(c) are illustrative of the expanding role of the client in controlling his or her legal affairs.

Obligations arising out of the attorney-client relationship are important primarily to the attorney and client and only secondarily to third parties. When an attorney fails to perform duties owed to a client, a remedy may be found in litigation, arbitration or further negotiation. If these measures prove unsuccessful or if there are repeated defaults, an attorney's conduct may become the subject of a disciplinary proceeding. It is rare, however, that a court presiding over litigation in which the attorney represents the client will resolve conflicts or enforcing obligations between the attorney and client. To do so could affect the court's impartiality in determining the primary controversy.

In contrast, an attorney's duties to a court are actually duties owed to the legal system. Because the attorney is an essential player in the judicial process, performance of duties to the court are important to the outcome in pending litigation and to public confidence in the legal system. Such duties are not subject to negotiation and do not vary from case-to-case based upon the needs and desires of a given client.

Regardless of a client's desire for a particular outcome, an attorney has an ethical responsibility to act only within proper bounds and to be honest with the court. Stated otherwise, the role of an ethical lawyer is "as an officer of the court and a key component of a system

---

16. *See, e.g.,* COLO. R. PROF'L CONDUCT 1.1 (competence), 1.2 (scope and objectives of representation), 1.3 (diligence), 1.4 (communication), 1.7 (conflict of interest), 3.3 (candor toward the tribunal), 4.1 (truthfulness in statements to others), and 4.2 (communication with person represented by counsel).

of justice, dedicated to a search for truth...."

*Nix v. Whiteside*, 475 U.S. 157, 174, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).

An attorney's obligations to the legal system arise upon his or her licensure. Such obligations are embedded in the attorney's oath [17] and are what make attorneys "officers of the court." Fundamental among such obligations are candor, honesty and compliance with the rules of and orders issued by a court. In performing these duties lawyers demonstrate their obeisance to the rule of law and their confidence in the judicial process. When lawyers fail in these duties they give license to all citizens to ignore both the law and judicial authority. To ensure that the judicial process works properly and predictably, every court is empowered to enforce its own rules and orders, particularly with regard to the officers who practice before it.

> "[D]eeply rooted in the common law tradition is the power of any court to 'manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.'"

*Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir.1993), *quoting Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir.1985), *which quoted Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885, 888 (5th Cir.1968).

The obligations of an attorney to a court changes over time as ethical rules and rules of procedure are revised, hopefully with input from both bench and bar. However, such modifications are only indirectly related to the dynamics inherent to attorney-client relationships. For example, even though COLO. R. PROF'L CONDUCT 1.2(c) allows unbundling of legal services,

an attorney remains obligated to comply with Colo.R.Civ.P. 11(b). In the same vein, no client can authorize an attorney to engage or assist a client in engaging in conduct that is criminal or fraudulent. COLO. RULES OF PROF'L CONDUCT 1.2(d).

Both Mr. Zurinskas and the U.S. Trustee have confused Mr. Zurinskas' duties. The limitation of Mr. Zurinskas' services to the Debtor grew out of the attorney-client relationship, but his duty to sign the petition was owed to the Court and legal system. Mr. Zurinskas incorrectly assumed that his agreement with the Debtor excused his obligation to the Court. The U.S. Trustee mistakenly invokes § 329(b), which focuses on the attorney-client relationship, to enforce Mr. Zurinskas' obligations to the court.

Reduction or recoupment of Mr. Zurinskas' fees pursuant to § 329(b) for a violation of Rule 9011 is not appropriate. Rule 9011 provides its own enforcement mechanism. Mr. Zurinskas' error is a technical breach of Rule 9011(a) which can be corrected by filing an amended petition bearing his signature and filing an amended Rule 2016 disclosure which reflects the limitation in the scope of his representation of the Debtor.

### B. Failure to Attend the Section 341 Meeting.

The U.S. Trustee also seeks recoupment of fees pursuant to § 329(b) for Mr. Zurinskas' failure to attend the Debtor's Section 341 meeting. Paralleling the Court's prior analysis with regard to signing the petition, the first issue is whether Mr. Zurinskas had a duty to attend the Section 341 meeting. If so, did his obligation arise out of the attorney-client relationship or was it a duty owed to the court? If it arose in the attorney-client relationship,

---

**17.** The oath of admission for attorneys in Colorado includes:

> I will maintain the respect due to Courts and judicial officers;
> I will employ only such means as are consistent with truth and honor;

> I will treat all persons whom I encounter through my practice of law with fairness, courtesy, respect and honesty; ...
> I will at all times faithfully and diligently adhere to the Colorado Rules of Professional Conduct.

then the final inquiry is whether Mr. Zurinskas' default resulted in injury either to the debtor or the estate.

 The answer to the first question is less clear than it is with regard to Mr. Zurinskas' obligation to sign the petition because neither the Bankruptcy Code nor the Bankruptcy Rules expressly require an attorney representing a debtor to attend the Section 341 meeting. The debtor is required to attend the Section 341 meeting by 11 U.S.C. § 343, and the failure to do so can result in dismissal of the bankruptcy case or denial of discharge. *See* 11 U.S.C. §§ 707(a)(1), 727(a)(6), 1112(b)(3), and 1307(c)(1); *In re Sochia,* 231 B.R. 158 (Bankr.W.D.N.Y. 1999); *Britt v. Logan (In re Logan),* 145 B.R. 324 (Bankr.D.Kan.1992); *In re Ladd,* 82 B.R. 476 (Bankr.N.D.Ind.1988); *In re Fulton,* 52 B.R. 627 (Bankr.D.Utah 1985). However, the Section 341 meeting is set by the U.S. Trustee and conducted without involvement by the bankruptcy court. Indeed, the Bankruptcy Code expressly prohibits the bankruptcy court from conducting, supervising or participating in the meeting. 11 U.S.C. § 341(c).

Though a debtor's attorney is not required to attend the Section 341 meeting, such attendance is common and often beneficial to the debtor, creditors and the trustee. The meeting is not a deposition, but a debtor's testimony is given under oath and such testimony may influence later action by a trustee or creditor. The trustee or creditors may make demands upon the debtor to turn over property, to produce further financial information or to enter into agreements which affect the debtor's rights during and after the case. When a debtor's attorney is present, the debtor can ask questions and obtain advice before responding, and the debtor's attorney may gain information necessary to representation later in the case. Trustees and creditors also benefit from having the debtor's attorney counsel the debtor, clarify questions, provide information and resolve upcoming issues. As a result, meetings attended by a debtor's attorney frequently proceed more quickly and productively.

The U.S. Trustee argues that the Court should require that all attorneys representing debtors attend Section 341 meetings. Such argument is premised upon several opinions which recognize the importance of the attorney's attendance at the Section 341 meeting. With one exception, these cases are distinguishable from the facts presented here. The decisions fall into two groups. The first group are bankruptcy cases in which fees were reduced due to the debtor's attorney's failure to perform several duties including attendance at the Section 341 meeting.[18] The second group is composed of disciplinary cases where failure to attend the Section 341 meeting was found to be one of several deficient practices.[19]

In only one case, *In re Hailey,* 21 B.R. 453 (Bankr.N.D.Ga.1982), did the court re-

---

**18.** *See Hale v. U.S. Trustee (In re Basham),* 208 B.R. 926, 932 (9th Cir. BAP 1997) *aff'd* 152 F.3d 924 (9th Cir.1998) (table) (fees for pre-petition document preparation were excessive where attorney failed to file fee disclosure required by § 329(a) and Fed.R.Bankr.P. 2016(b), failed to keep contemporaneous time records and failed to attend Section 341 meeting); *In re Landis,* 2 B.R. 341, 342 (Bankr. S.D.Ohio 1980) (fees excessive where attorney contracted to represent debtor at Section 341 meeting but did not do so).

**19.** *See In re Barnes,* 691 N.E.2d 1225 (Ind. 1998) (attorney suspended for neglect of client matters including not filing Chapter 13 plan, failing to attend creditor's meeting and failing to keep clients advised); *Columbus Bar Ass'n v. Flanagan,* 77 Ohio St.3d 381, 674 N.E.2d 681 (1997) (reprimand for attorney's unprofessional conduct and neglect of legal matters including allowing non-attorney employee to advise clients and prepare documentation without review by attorney, failing to meet with clients and failing to attend Section 341 meeting); *Kentucky Bar Ass'n v. Goodrich,* 851 S.W.2d 479 (Ky.1993) (suspension of attorney for failing to timely file bankruptcy petition, failing to communicate with clients and failing to attend Section 341 meetings).

quire disgorgement under § 329(b) solely for the attorney's failure to attend the Section 341 meeting. In *Hailey,* neither the debtor nor her attorney appeared at the Section 341 meeting. The court issued an order to show cause to the attorney. According to the opinion, the attorney's fees were recouped because she "did not make an adequate showing as to why her fee should not be forfeited." The opinion does not disclose what showing was made, why it was deficient or provide guidance as to why the court found the fee excessive. At most this opinion, like the others relied upon by the U.S. Trustee, demonstrate that attendance by the debtor's attorney at the Section 341 meeting may be important in a particular case and that in such case reduction of fees may be warranted for counsel's failure to attend.

Such conclusion is consistent with the experience of this Court, but it does not justify imposition of a rule mandating attendance by every attorney representing a debtor at every Section 341 meeting. The necessity and benefit of attendance by a debtor's attorney at the Section 341 meeting depends on the nature and circumstances of each case. Attendance may be critical in some cases, particularly those with complicated facts or where the debtor is unfamiliar with financial matters. It may be of benefit in some cases and relatively unimportant in other cases. Some *pro se* debtors move through the bankruptcy process successfully without legal assistance at the Section 341 meeting or otherwise. The necessity for the attorney's attendance at the Section 341 meeting should be evaluated in light of the needs of the client, the agreed services to be provided, the circumstances of the case and the standard of practice in the community.

In this case, there has been no showing that Mr. Zurinskas' failure to attend the Debtor's Section 341 meeting violated his duty to the Debtor, dropped below the minimum professional standards in the community or resulted in injury to the Debtor or to the estate. Absent such showing, Mr. Zurinskas' fees are not subject to reduction or recoupment pursuant to 11 U.S.C. § 329(b).

**IT IS THEREFORE ORDERED** that the U.S. Trustee's Motion is **GRANTED IN PART** and **DENIED IN PART.** In accordance with the Motion, the Court has reviewed Mr. Zurinskas' fees, but determines that reduction or recoupment pursuant to 11 U.S.C. § 329(b) is not warranted.