In re Lawrence E. CUDDY, Jr. and Betsy J. Graf Cuddy, Debtors.

Danvers Savings Bank, Plaintiff,

v.

Lawrence E. Cuddy, Jr., Defendant.

Bankruptcy No. 04–12166–WCH.
Adversary No. 04–1208.

United States Bankruptcy Court,
D. Massachusetts.

March 24, 2005.

Donald H. Adler, Dennis Ford Eagan, Newburyport, MA, for Finneran & Nicholson, P.C.

Astrid Stevens Daly, Wears, NH, Robert L. Marder, Lynn, MA, for Danvers Savings Bank.

Phoebe Morse, Gary L. Donahue, Boston, MA, for the United States Trustee.

*Decision on Motion to Withdraw
as Counsel to Defendant*

WILLIAM C. HILLMAN, Bankruptcy Judge.

### Introduction

The issue before me is whether Donald H. Adler, Thomas G. Nicholson, and the firm of Finneran & Nicholson, P.C. ("Movants") are entitled to withdraw from their representation of Lawrence E. Cuddy, Jr. ("Defendant") as a result of Defendant's nonpayment of fees. For the reasons stated below, I will enter an order denying the motion.

### Facts

On March 17, 2004, Defendant and Betsy J. Graf Cuddy ("Mrs. Cuddy") filed a petition under Chapter 7. The schedules indicated that there were no secured or priority creditors and general creditors' claims totaled $1,006,966,[1] of which $200,000 was owed to Danvers Savings Bank ("Danvers").

At the time of filing, Defendant and Mrs. Cuddy were both represented by the same counsel. He moved to withdraw on May 14, 2004 due to a conflict. I granted the motion on May 21, 2004. In the meantime, on May 14, 2004, new counsel entered an appearance in the main case for Mrs. Cuddy only.[2] On May 10, 2004, Defendant entered into a written "Legal Services—Fee Agreement" (the "Fee Agreement") and an Engagement Letter with Movants. The Movants did not introduce a copy of the Engagement Letter.

The Fee Agreement provided for an initial retainer of $2,500 and included a provision allowing Movants to withdraw in the event that the Defendant failed to replenish the retainer or failed to pay any outstanding invoices. Specifically, paragraph 5 of the Fee Agreement provides as follows:

"**Withdrawal from Representation Where Non–Payment.** It is agreed that if any retainer is not replenished (for the initial Matter and/or any and all subsequent and/or additional legal services requested to be performed and performed by the Firm) to the amount requested by the Firm within 15 days of the date of the bill requesting the replenishment and/or interim or final statement, bill or invoice for services rendered is not paid, when and as due, the Firm may immediately cease providing services under this Agreement and **the Client will not oppose the Firm from withdrawing its representation**

---

1. The total includes some debts to taxing authorities.

2. Mrs. Cuddy is not involved in this adversary proceeding.

**of the Client and, if requested, Client will consent in writing to the Firm removing any court appearance it may have filed in connection with representation of the Client. This is an essential and vital agreement to the Firm's agreeing to provide services rendered."** [3]

Donald H. Adler entered his appearance for Defendant in the main case on May 25, 2004.

On June 25, 2004, Danvers filed an Adversary Complaint against Defendant, objecting the Defendant's discharge under 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(5) and to the dischargeability of Defendant's debt to it under 11 U.S.C. § 523(a)(2)(B).

On July 26, 2004, Thomas G. Nicholson filed a "limited notice of appearance" "for the sole and limited purpose of filing the parties' Assented to Motion to Extend Time...." [4] Notwithstanding that additional agreed compensation had not been paid, he filed a general appearance for Defendant on August 9, 2004.

Movants filed a motion to withdraw as counsel to Defendant (the "Motion") on January 4, 2005. [5] No successor counsel has entered an appearance for Defendant. As grounds, Movants assert that as a condition precedent to their representation of Defendant in the adversary proceeding, Defendant agreed to pay an additional retainer, and that Defendant has not paid the second retainer or any additional sums

for which he was billed by Movants. Under those circumstances, Movants contend that Defendant has breached the Fee Agreement and they are entitled to withdraw on that basis. In their statement of compensation, which Movants filed on February 23, 2005, [6] they acknowledge having received $12,811.91 in the principal case with a balance remaining unpaid of $2,659.51, and having received $2,836.09 in the adversary proceeding, with a balance remaining due of $1,459.10, both as of January 20, 2005.

Defendant did not oppose the Motion. I held a hearing on the Motion and took it under advisement. Movants, Danvers, and the United States Trustee filed post-hearing briefs.

## Discussion

■ If the Fee Agreement is to be construed only under the basic principles of contract law, the Motion should be denied. While it allows Movants to withdraw in the event of non-payment, Movants waived that right when they entered a general appearance in the adversary proceeding without payment of the promised additional fees. This is not a simple contract dispute. It involves principles of ethics and the administration of justice.

■ Attorneys practicing in the Massachusetts courts are bound by the Massachusetts Rules of Professional Conduct

---

3. Boldface in original.

4. He cited to MLBR 9010–3 in support, but that rule does not reference limited appearances. MLBR 9010–3(a) merely makes an entry of appearance unnecessary where another pleading is filed. Messrs. Nicholson and Adler appear to be members of the same firm.

5. The Motion bore the captions of both the main case and the adversary proceeding and

was docketed in the latter only, A.P. No. 04–1208, Docket No. 17 but I will treat it as applicable to both.

6. The United States Trustee argued that Movants' failure to file the statement of compensation required by 11 U.S.C. § 329 and Fed. R. Bankr.P.2016(b) was grounds for denying the Motion. That argument is mooted by Movants', albeit tardy, filing.

("RPC").[7] Massachusetts attorneys are bound by those same standards when practicing in the local federal courts.[8] In addition, of course, they are bound by the rules of this Court, including MLBR 9010–3(d):

> An attorney representing a debtor in a bankruptcy case is required to represent the debtor in any adversary proceeding filed within the bankruptcy case in which the debtor is a named defendant unless the debtor expressly agrees otherwise at the commencement of the representation.

In the case at bar only the generalized "pay-or-we-will-quit" language was applicable, and I hold that the language of the Fee Agreement does not satisfy the local rule for an express agreement *ab initio*.

MLBR 9010–3(d) is an implementation of RPC Rule 1.2(c) which, as presently in force in Massachusetts, provides that "[a] lawyer may limit the objectives of the representation if the client consents after consultation." The comment to that provision as relevant here provides:

> ■ An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus, the client may not be asked to agree to representation so limited in scope as to violate Rule 1.1 . . . .

Rule 1.1 directs the lawyer to "provide competent representation to a client." It continues "[c]ompetent representation requires the legal knowledge, skill, thorough-ness, and preparation reasonably necessary for the representation." [9]

Assuming without deciding that Defendant's signature on the Fee Agreement constitutes "consultation" within the meaning of the quoted rule, I turn to whether it provides sufficient basis for the granting of the Motion.

RPC Rule 1.16(a) provides instances where withdrawal of counsel is mandatory; it is not involved here. RPC Rule 1.16(b) provides that a lawyer *may* withdraw from representing a client upon certain specified grounds. As relevant here they are:

> . . . if withdrawal can be accomplished without material adverse effect on the interests of the client, *or if* [italics supplied]:
>
> . . . .
>
> (4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled . . . .

Thus, under the RPC standards, an attorney is allowed to withdraw from a matter even though the withdrawal will have a material adverse effect on the interests of the client, if the client has violated the type of payment agreement before me. The only check on this broad power is contained in RPC 1.16(c), which provides

> if permission for withdrawal from employment is required by the rules of a tribunal a lawyer shall not withdraw

---

7. Massachusetts Rules of Professional Conduct and Comments, Supreme Judicial Court Rule 3:07.

8. *Chimko v. Lucas (In re Lucas)*, 317 B.R. 195, 200 (D.Mass.2004). *See* Rules of Attorney Disciplinary Enforcement for the Court of Appeals for the First Circuit, Rule IV–A; Local Rule 83.6(4)(B) (D.Mass.).

9. The Model Rule was amended in 2002 to read that a lawyer is permitted to "limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." *See* ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT 36 (5th ed.2004). "The amendment was intended to clarify the allowance—and regulation—of limited-representation agreements." *Ibid.*

from employment in a proceeding before that tribunal without its permission.

This Court has such a requirement, found in MLBR 2091–1(a):

"An attorney may withdraw from a case or proceeding without leave of the Court by serving a notice of withdrawal on the client and all other parties in interest and filing the notice, provided that:

(1) such notice is accompanied by the filing of a notice of appearance of successor counsel;

(2) there are no motions pending before the Court; and

(3) no trial date has been set."

Unless these conditions are met, an attorney may only withdraw from a case or proceeding with leave of the court. No successor counsel has appeared in this proceeding, hence the necessity for the Motion.

In considering the Motion, I find myself joining in concerns voiced by Judge Grant some years ago:

[T]he motion comes at a time when the court has been indulging in a high degree of self examination with regard to the circumstances which warrant giving an attorney permission to withdraw from the representation of his client. Because of this, the court feels it is appropriate to thoroughly discuss these concerns, so that members of the bar can not only understand the reasons for the court's action (even if they do not agree with it) but so they also can understand what will be expected of them when they undertake the representation of a bankruptcy debtor.[10]

■ Where permissive withdrawal is sought by an attorney, the motion is addressed to the discretion of the trial court.[11] Withdrawal will not necessarily be appropriate in all circumstances.[12] In exercising my discretion, I am concerned with the competing interests of Movants, Defendant, and the Court, for, as Judge Keeton has said, "An attorney who agrees to represent a client in a court proceeding assumes a responsibility to the court as well as to the client."[13] It is a delicate balancing act:

[E]ach case must be assessed to determine a result that will be fair to the client, the attorney and the court, taking the rights and interests of each into account.[14]

On the one hand, Movants had a reasonable expectation that they would be paid for services to be rendered. Anticipating the possibility of Defendant's failure to pay, they expressly reserved the right to withdraw from the representation in the event of non-payment. But this may not provide adequate grounds for the granting of the Motion:

An attorney who undertakes to represent a client assumes obligations toward his client which are not excused merely because the client is unable to pay fees demanded by the attorney.[15]

10. Colter v. Edsall (In re Edsall), 89 B.R. 772, 773 (Bankr.N.D.Ind.1988).

11. Andrews v. Bechtel Power Corp., 780 F.2d 124, 135 (1st Cir.1985), cert. denied 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986).

12. V.H. v. J.P.H., 62 Mass.App.Ct. 910, 911, 815 N.E.2d 1096, 1097 (2004).

13. Hammond v. T.J. Litle and Co., 809 F.Supp. 156, 159 (D.Mass.1992). See also Hasbro, Inc. v. Serafino, 966 F.Supp. 108 (D.Mass.1997).

14. N.Y. State Bar Assn Comm. Prof. Ethics Op. No. 598 *1, 1989 WL 252367 (1989).

15. Goldstein v. Albert (In re Albert), 277 B.R. 38, 46 (Bankr.S.D.N.Y.2002).

The primary reason for the additional services required of Movants was the adversary proceeding filed by Danvers under 11 U.S.C. §§ 523 and 727. Such actions are not common.[16] To quote Judge Grant again:

> Counsel who initiate bankruptcy proceedings on behalf of their clients can reasonably expect that the debtor's right to discharge either all or any of its debts will come under scrutiny and may be challenged in an adversary proceeding. For this reason, a complaint pursuant to either § 523 or § 727 should come as no great surprise to any debtor's attorney.[17]

Defendant appreciated that he required the services of counsel in pursuing his bankruptcy case, in my mind an entirely sensible approach.[18] After his original counsel withdrew, he hired the Movants.

And from the viewpoint of the bench, a *pro se* debtor presents often monumental problems of case administration. Judge Grant again:

> Pro se litigants present the court with important concerns. More often than not, they are unfamiliar with legal procedures or the formality of trial practice. For this reason they are to be indulged. Frequently, they lack a workable knowledge of the finer points of the issues being litigated. Thus, at trial, a line of questioning or chain of reasoning may not be pursued because they do not understand its significance—something which usually would not escape the attention of a skilled attorney, In such a situation, the court is confronted with the difficult choice between raising unspoken questions and advancing silent arguments or adopting a more passive role. To follow the first course, while often promoting a decision based on the underlying merits of a case, may tarnish the appearance of judicial impartiality. The second path, while preserving appearances, may result in an unwarranted victory almost by default. Representation by counsel generally eliminates this dilemma.

> More important than the difficulties they present to the court is the fact that pro se litigants, in a very real sense, can be a danger to themselves. Without an understanding of the importance of facts in issue, the applicable law, or why their discharge has even been challenged, they often flounder helplessly at trial, aimlessly pursuing meaningless points and arguments. From the standpoint of a debtor whose discharge has been challenged, to proceed pro se presents the very real possibility that the creditor will prevail for the sole reason that its opponent did not understand the facts in issue or how to defend against the allegations raised.[19]

The image that has come to my mind most insistently while working on this opinion is this: A professional swim instructor takes on a new student with this understanding: You have paid me my initial fee. For that money I will lead you to

---

16. Statistics drawn from the records of this Court indicate how seldom counsel will be required to defend such actions:

| Year | Non–Business Cases Filed | §727 | §523 | Total | % |
|------|--------------------------|------|------|-------|-----|
| 2002 | 14,165 | 60 | 181 | 241 | 1.7 |
| 2003 | 15,070 | 60 | 211 | 271 | 1.7 |
| 2004 | 15,168 | 36 | 163 | 199 | 1.3 |

17. *Edsall, supra,* at 774. I appreciate that Movants were not the original counsel for Defendant, but, as successors, they have assumed the mantle.

18. Writing for a lay audience, I once devoted an entire chapter to this subject, ending with the italicized admonition *"YES, you do need a lawyer in a bankruptcy case."* WILLIAM C. HILLMAN, PERSONAL BANKRUPTCY 23 (2nd ed.1995).

19. *Edsall, supra,* at 775.

the swimming pool, show you how to enter the water, and explain the basic elements of swimming. If, however, you should begin to drown, of if some other serious problem arises, I will leave you to your own resources unless you pay me more money.

 Even if this message is clearly conveyed to the student, if the desire to learn to swim is strong enough (just as if the need for the bankruptcy remedy is strong enough for the debtor *in extremis*) the student will accept the terms. It looks like and sounds like a contract of adhesion, with all of the unlovely baggage that phrase carries. It is contrary to my view of the higher obligation of an attorney.

> Once a lawyer accepts retainer to represent a client he is obliged to exert his best efforts wholeheartedly to advance the clients [*sic*] legitimate interests with fidelity and diligence until he is relieved of that obligation either by his client or the court. The failure of a client to pay for his services does not relieve a lawyer of his duty to perform them completely and on time, save only when relieved as above.[20]

The resistance of courts to the practice of offering limited services (the nonce word appears to be "unbundling") is evident in a number of recent cases. The most comprehensive is *In re Egwim*,[21] in which Judge Bonapfel carefully and extensively explained the applicable principles. He points out

> three fundamental requirements that must be met before an attorney may

properly limit the scope of services to be provided to a client. First, the attorney must consult with the client about the limited representation that will be provided. Second, the client must provide informed consent, and this consent should be evidenced by a writing. Most important, the limitation must be reasonable in the circumstances or, in terms of the Georgia Rule, the engagement must not be so limited as to prevent competent representation.[22]

After explaining what complications can and do arise in the context of consumer bankruptcy cases, he concludes:

> An attorney desiring to limit the scope of an engagement has the burden of demonstrating compliance with all of the conditions required for the validity of the limitation. *In the context of representing a consumer in an area of law as complex as bankruptcy, it will be the unusual case where the burden can be met.*
>
> . . . .
>
> In summary, the principles and authorities addressed above establish that an attorney representing a chapter 7 debtor ordinarily may not limit the scope of that engagement.[23]

A narrower but related example, *In re Johnson*,[24] involved an attorney whose contract with clients provided that, in consideration of a reduced fee, he would not attend the § 341 meeting. The practice was condemned as a matter of public policy and the attorney was sanctioned.[25]

---

20. *State Bar of Michigan v. Daggs*, 384 Mich. 729, 732, 187 N.W.2d 227, 228 (1971).

21. 291 B.R. 559 (Bankr.N.D.Ga.2003).

22. *Id.* at 571. The "Georgia Rule" is the same as RPC Rule 1.2.

23. *Id.* at 572 (emphasis added).

24. 291 B.R. 462 (Bankr.D.Minn.2003).

25. To the same effect, *see In re Castorena*, 270 B.R. 504 (Bankr.D.Idaho 2001); *In re Bancroft*, 204 B.R. 548 (Bankr.C.D.Ill.1997).

I hold that, in this case, the failure to replenish the retainer does not constitute cause for withdrawal.

### Conclusion

For the reasons stated, I will enter a separate order denying the Motion.