In re Deanna BULEN, Debtor.

In re Brenda Y. Huynh, Debtor.

Bankruptcy Nos. 05–31011, 05–37944.

United States Bankruptcy Court,
D. Minnesota.

Sept. 19, 2007.

Barbara J. May, Attorney at Law, Roseville, MN, for debtors.

Mary Jo A. Jensen–Carter, Buckley & Jensen, White Bear Lake, MN, trustee.

John A. Hedback, St. Anthony, MN, trustee.

## ORDER ON MOTION FOR SANCTIONS AND DISALLOWANCE OF ATTORNEY FEES

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court for an evidentiary hearing on motions by the United States Trustee seeking disallowance and disgorgement of all compensation received in the above captioned cases by attorney Barbara J. May and for sanctions. Michael R. Fadlovich and Michael E. Ridgway appeared on behalf of the UST, and James A. Lodoen appeared on behalf of Barbara J. May. Based upon all of the files, records and proceedings in this matter, the Court being now fully advised makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. SUMMARY OF ISSUES AND FINDINGS

The UST alleges that May, either negligently or intentionally, misrepresented fees charged and collected in her Rule 2016(b) statements filed in these cases, and that the misrepresentations are cause for denial of all fees in the cases. The UST also seeks the sanction of suspension of May's privilege to practice in the Bankruptcy Court in the District of Minnesota for a period of at least one year. At

conclusion of the hearing, the Court orally found that the UST had wholly failed to establish any misconduct on the part of May in connection with the Rule 2016(b) statements that would justify any relief sought by the UST. This order memorializes those findings.

But, the Court expressed a strong inclination to find that May's retainer agreement in both cases violated Local Rule 9010–3(e)(4) and resulted in inadequate and unreasonable representation; that fees from both cases would be ordered disgorged based upon that violation; that the Court would issue an injunction against continuing use of the improper retainer agreement; and that May would be required to file a revised retainer agreement subject to Court approval. However, the Court allowed May time to file a post-trial brief addressing the LR violation issue because the UST did not raise the propriety of May's retainer agreement. The Court raised the issue *sua sponte* at the hearing. Upon the filing of May's supplemental brief, which included a revised proposed retainer agreement, the Court took the matter under advisement, pending May's testimony in an 11 U.S.C. § 727 action brought by the UST against Brenda Y. Huynh. That testimony has now been given.

The Court finds that the retainer agreements used by May in these cases violate Local Rule 9010–3(e)(4), all fees received in the two cases should be disgorged, May should be enjoined against continuing use of the improper retainer agreement, and any revised retainer agreement is subject to Court approval.

## II. BACKGROUND

This controversy originated as a result of the UST's review of Rule 2016(b) compensation statements filed in cases in which Barbara J. May served as debtor counsel. In 2003, May entered into a settlement with the UST regarding reporting of fees issues from cases in 2001, and since that time there have been no similar problems until a current review of May's cases revealed discrepancies in the above captioned matters. The UST filed the present motions seeking disallowance of · all fees in these cases, disgorgement of fees, and a suspension from practice before the bankruptcy court for at least one year against May.

May filed 2016(b) statements in the above captioned cases indicating fees received purportedly in amounts substantially less than actually paid by the debtors for bankruptcy related legal services. According to the UST, May's negligent or intentional erroneous preparation of the Rule 2016(b) statements in these cases is cause for denial of all fees in the cases. The UST requests disallowance, disgorgement and other sanctions pursuant to 11 U.S.C. § 329(a),[1] Fed. R. Bankr.P. 9011,[2] 28 U.S.C. § 1927,[3] and 11 U.S.C. § 105(a).[4]

---

**1.** Section 329(a) provides: Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

**2.** Fed. R. Bankr.P. 9011 states: (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

**3.** 11 U.S.C. § 1927 provides: Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in

May asserts that her disclosures in Bulen were essentially accurate, and that in Huynh the inaccuracy was an innocent and excusable error since remedied.

## III. UST MOTION FOR SANCTIONS

*Deanna Bulen*

■ In this case, May filed a Rule 2016(b) statement claiming to have been paid $2,500, when in fact she was paid $5,000. Bulen wrote a check to May in the sum of $5,000 dated December 20, 2004. On the memo line of the check it states "Services for Bankruptcy." The Statement of Financial Affairs filed on behalf of Bulen likewise failed to disclose May's receipt of $5,000.

However, The Statement of Financial Affairs in Bulen's case also specifically provides, under item # 9 for payments related to debt counseling or bankruptcy:

> *Counsel has also worked with debtor on real estate issues and post decree issues, as well as reviewing construction contracts, and has been paid separately for those prefvious (sic) to bankruptcy retainer.*

May represented Bulen in her divorce litigation and other proceedings as well as with the bankruptcy. The total $5,000 payment was not disclosed as a payment to a creditor within ninety days of filing because May considered the payment to fund ongoing legal services and not as payment on an antecedent debt. The payment was made two months prior to filing, and Bulen

much later retained May separately for representation in an adversary proceeding.

While the UST has argued vehemently under every possible basis that May's disclosure in this case constitutes conduct "beyond the simple filing of frivolous pleadings," and "wholly indifferent to the requirement of properly filling out the Rule 2016(b) Statement," there is actually no evidence before the Court by which to conclude that the disclosure was anything more than poorly drafted. Instead, it is more reasonable to conclude, and the record supports the finding, that the $5,000 was only in part for bankruptcy services, and that the check was so noted by the debtor because that was when the bankruptcy representation began, alongside other nonbankruptcy legal services concurrently being provided to Bulen by May.

*Brenda Huynh*

■ In this case, the UST's issue revolves around an apparent overpayment by the debtor of $1,604 compared to amount of fees disclosed. May filed a Rule 2016(b) claiming she was paid $2,759, when in fact she was paid $4,363. The Statement of Financial Affairs filed on behalf of Huynh likewise failed to disclose May's receipt of $4,363, but instead disclosed the receipt of $2,759.

May claims that her possession of the difference of $1,604, since returned to the Chapter 7 trustee, was the result of a miscommunication with the debtor and a mistake by her office in the handling of funds. The UST asserts that "[s]uch a claim is simply not believable since there

any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**4.** Section 105(a) provides: The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title

providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

has been a long established pattern of conduct by Ms. May," and that "by taking the funds and failing to turn them over [immediately] to the chapter 7 trustee, attorney Barbara May converted the funds to her own use."

Indeed, May maintained the $1604 excess in her operating and trust accounts for more than a year, and the suggestion that the debtor wrote the retainer fee over the amount based on her understanding that it would be necessary in relation to an exemption issue later is suspect. Nevertheless, the Huynh case was filed in early October 2005, during the pre-BAPCPA rush. During that time, May was meeting with new clients all day long and late into the evenings. When she arrived at the office in the morning there were often lines of people waiting. May filed as many as 60–80 cases during the few weeks prior to BAPCPA. There was at that time an above average opportunity for confusion and error. Moreover, after May completed her initial meeting with Huynh, May's paralegal secretary, Susan Eastman, opened the Huynh file and collected the payment from Huynh, and prepared the 2016(b).

Again, the UST has brought this cause forward with much ardor, but without the necessary probative evidence. In fact, the evidence demonstrates that May was cooperative in response to both of these inquiries. There is nothing before the Court to compel the conclusion that the overpayment and apparently inconsistent fees disclosure was anything other than an inadvertent error since corrected by May's voluntary turnover of the excess $1604 to the trustee of the Huynh bankruptcy estate in January 2007.

## IV. RETAINER AGREEMENT ISSUE

Local Rule 9010–3 provides, in relevant part:

(e) SUBSTITUTION; WITHDRAWAL.

(1) Substitution.

If a party in an adversary proceeding or a debtor in a chapter 7 or 13 case wishes to substitute attorneys, the party or debtor shall file a substitution of attorney signed by the client, the original attorney and the substituted attorney. If a client wishes to substitute attorneys and the client's employment of the attorney was subject to approval by the court, the client shall make an application to substitute attorneys and comply with Local Rule 2014–1.

(2) Withdrawal.

An attorney in a bankruptcy case whose employment was subject to approval by the court, an attorney for any party in an adversary proceeding, or an attorney for a debtor in a chapter 7 or 13 case who wishes to withdraw without a substitution of attorney shall make a motion for leave to withdraw.

(3) Service.

In an adversary proceeding, substitutions, motions and applications shall be served on all parties to the proceeding and in a case on all entities specified in the applicable subparagraph of Local Rule 9013–3(a).

(4) Effect of Failure to Comply.

*Until a substitution of attorneys is filed or an order is entered allowing the original attorney to withdraw, the original attorney is the client's attorney of record and the original attorney shall represent the attorney's client in bringing and defending all matters or proceedings in the bankruptcy case other than adversary proceedings in which the original attorney has not yet made an appearance. Failure to receive advance payment or guarantee of attorney's fees*

*is not grounds for failure to comply with this subsection.*

*See* Bankr.D. Minn. L.R. 9010–3(e) (emphasis added).

The retainer agreement executed between May and her clients in both the Bulen and Huynh cases provides, in pertinent part:

Debtor understands that this retainer will pay the attorney for advice on the effects of bankruptcy, the effective use of exemptions, the bankruptcy discharge, the preparation of schedules, any telephone consultations, and a single appearance at a first meeting of creditors. There will be additional fees for rescheduled hearings, additional First Meetings of creditors, motions for relief from the automatic stay, motions for dismissal, motions for turnover or objections to exemptions, or depositions, and any schedules that need amendment after filing. Debtor will need to contract with attorney separately for these matters.

WITHDRAWAL OF ATTORNEY: Client understands and expressly agrees that Attorney may withdraw from representation of Client at any time if Client fails to honor the fee arrangement herein set forth including, but not limited to, payment of fees and expenses on a timely basis; fails to cooperate in the preparation of the case; or otherwise takes any action which impedes the ability of Attorney to provide adequate and ethical representation.

■ The Court finds that the above language from May's retainer agreement is squarely at odds with the Local Rule 9010–3(e)(4), controlling in this jurisdiction. It violates the rule because it informs the client that the attorney can withdraw for any reason, including untimely payment of fees, and because it states that appearances beyond the first meeting are subject to further negotiation of fees. The Local Rule is unequivocally clear: the original attorney shall represent the debtor in bringing and defending all matters or proceedings in the main bankruptcy case unless and until there is a valid substitution of counsel filed or an order granting withdrawal entered. Moreover, the Rule is clear that until there is a valid substitution or withdrawal, the attorney must continue to represent the debtor in all matters in the main case without regard to payment or promise of additional fees.

May argues that her retainer agreement does comply with the Local Rule because it does not exclude the requirements therein, and because it also complies with other rules applicable to attorney conduct such as Minnesota Rules of Professional Conduct 1.16(b)(5) (a lawyer may withdraw from representing a client if the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled) and MRPC 1.16(c) (a lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation and, when ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation). She submits that retainer agreements are not required to reference or incorporate the respective local rules, but rather that her actions as an attorney must nevertheless comply with the local rules, regardless of the contents of her retainer.[5]

---

5. May also relies upon similar withdrawal language used in example retainer agreements from treatises such as 1 Lane's Goldstein Litigation Forms § 3:10 (2006) and 14 Minnesota Practice Series, Family Law § 3.7 (2d ed.2006). This is of no moment in light of

These arguments are disingenuous. It is not exculpatory for the attorney to advise the Court that, of course, the attorney must and would apply for an order of withdrawal under the appropriate circumstances. One important aspect of the Local Rule is the safeguard of the substance of what the debtor is advised in the retainer regarding the scope of the right to representation in the main case. The rule simply does not allow withdrawal based on nonpayment of fees or lack of an arrangement for additional fees, and requires appearances in all proceedings in the main case. A provision in a retainer purporting to give the attorney the right of withdrawal and nonappearance is at best misleading, intimidating, and it works to prevent a debtor's objection to a motion to withdraw or to a failure to appear.

In fact, that is exactly what happened in the Huynh case. The debtor was served notice to appear for a Rule 2004 examination, whereupon May informed her that she would be required to execute another retainer agreement and pay an additional fee. She appeared without counsel at the examination, explaining that she could not afford to pay May anymore money.

Q. When you got the notice to come here, you talked to your attorney about it?

A. Yeah. I don't have money to pay her. She asked me to pay her. I thought there will be a trial on March 20th, about this, right?

Q. About something. Not this thing.

A. Something else?

Q. Something else, yeah. I'm not involved in that. I think that's to— think that's the trustee objecting to your exemptions.

A. My bankruptcy.

Q. Objecting to your exemptions for your house.

A. Do you know about it?

Q. I read the notice on the Internet about it.

A. About my house?

Q. Yes. When you talked to your lawyer about this, did she say she would not be here with you today?

A. Well, she asked me to pay her $1500 on this and I said I'm totally broke now. I don't have money to pay for it. If I can make a payment or something, then I will—but she said no, I have to pay her before Wednesday and then she will represent me.

Q. At this hearing?

A. Yeah,

Q. At this.

A. I say I don't have money, so that's why I have to go on my own. And I don't know because—I'm sorry to say that, but I don't know. Because I don't have money, that's why she doesn't want to talk to me or something. Yesterday I was trying to talk with her, but she said she has something going on and she have to wrap it up to go, so she doesn't have time to see me. I'm not working now. I don't have money. I'm totally broke.

Exhibit 13 to plaintiff's motion for summary judgment, Dep. Brenda Hyunh, Jan. 25, 2006, p. 39. In response to the question by the Court at the 11 U.S.C. § 727 trial of Huynh, whether May represented to Huynh that her appearance at the 2004

---

the particularity with which Local Rule of Bankruptcy Procedure 9010–3 applicable in the District of Minnesota mandates fully bundled main case representation except in the event of a withdrawal granted by the Court after notice and a hearing, or by a filed substitution of attorney.

examination was conditional upon a new retainer agreement and the payment of an additional fee, May acknowledged that Huynh "might have interpreted it that way." May also acknowledged that she had a duty to appear and represent Huynh at the examination. She did not appear, no substitution of counsel had been filed, and she did not obtain an order allowing her withdrawal. The Rule 2004 examination provided a substantial basis for the UST's § 727 action subsequently filed against Huynh.

While there appears to be a movement toward the "unbundling" of fees, and while it appears to have many proponents and some advantages, it is not a process without problems and consequences. "If done well, unbundling gives pro se litigants better access to justice, enables the courts to work more efficiently, and brings new clients to attorneys' offices." *See* Scott Russell, *Opportunity for All or Pandora's Box*, Bench & Bar of Minnesota, Feb. 2007, at 17. "Unbundling allows someone of limited means to buy at least some legal help instead of going it alone." *Id.*

And, while "limited scope" or "discrete task" legal services may offer some relief to lower income litigants in transactional matters, the à la carte trend is less common in the litigation context and apparently runs into difficulty in certain practice areas such as family law. *Id.* Similarly, unbundled legal representation in bankruptcy matters is generally not a sensible idea, and Local Rule 9010–3(e) reflects this judicial district's understanding of the problems debtors face when they are pro se or, worse still, when they begin the journey with counsel only to find themselves pro se at some point before the main case process is complete. "[U]nbundled services are not comprehensive," and

constitute "putting a Band–Aid on a gun shot." *Id.*

The Court agrees. Too often debtors appear, without counsel, typically at a hearing on an objection to exemption or a motion for turnover or relief from stay, no response filed, anxious to cooperate if possible or otherwise attempt to preserve some interest, but largely clueless. Nine times out of ten the debtor reports that counsel would not assist or appear because the debtor would not (and usually could not) produce additional fees beyond the original retainer already paid. In each instance counsel remains the attorney of record and has not filed a motion to withdraw. This unbundled situation is certainly not beneficial to the debtor. Neither does it provide any degree of efficiency or expediency to the Court. In bankruptcy, unbundled legal services essentially means unraveled legal process, not increased access to justice.

Unbundling is permissible according to MRPC 1.2(c), but only to the extent that the limitation is reasonable and only with the informed consent of the client.[6] However, Local Rule 9010–3(e) in effect provides that unbundling main case representation is patently not reasonable, except under circumstances determined by the Court after a hearing on a motion to withdraw, in the absence of a filed substitution of attorney. Likewise, the Rule does not contemplate the definition, measure, or propriety of "informed" consent to unbundled legal services. Overwhelmingly, all parties best conclude the legal process when competent attorneys are fully participating from start to finish. The pro se path is almost always longer and uniquely challenging for everyone involved.

---

**6.** MRPC 1.2(c) provides: A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

This controversy over the language in May's retainer agreement is not a minor matter. "It involves principles of ethics and the administration of justice." *See In re Cuddy*, 322 B.R. 12, 14 (Bankr.D.Mass. 2005). In *Cuddy* the bankruptcy court acknowledged that applicable professional conduct rules allow attorneys to limit representation, but only to the extent the limitation does not preclude the attorney from providing competent representation. *Id.* at 15. The court also acknowledged that the professional rules also allow attorneys to withdraw for nonpayment of fees unless the applicable tribunal requires permission to withdraw. *Id.*

In holding that "failure to replenish the retainer does not constitute cause for withdrawal," the *Cuddy* court explained:

An attorney who agrees to represent a client in a court proceeding assumes a responsibility to the court as well as to the client. It is a delicate balancing act: An attorney who undertakes to represent a client assumes obligations toward his client which are not excused merely because the client is unable to pay fees demanded by the attorney. [T]o proceed pro se presents the very real possibility that the creditor will prevail for the sole reason that its opponent did not understand the facts in issue or how to defend against the allegations raised. Once a lawyer accepts a retainer to represent a client he is obliged to exert his best efforts wholeheartedly to advance the client's legitimate interests with fidelity and diligence until he is relieved of that obligation either by his client or the court. The failure of a client to pay for his services does not relieve a lawyer of his duty to perform them completely and on time. In summary, the principles and authorities addressed above establish that an attorney representing a chapter 7 debtor ordinarily may not limit the scope of that engagement.

*Cuddy*, 322 B.R. at 16–18 (citations omitted).[7]

■■■ "It has long been the policy of this Court to require attorneys to strictly comply with Local Rule 9010–3(e), and sometimes to reprimand neglect and order sanctions for noncompliance." *See In re Johnson*, 291 B.R. 462, 468 (Bankr.D.Minn. 2003). This Court does not stand alone on the proposition that certain services are central to adequate bankruptcy representation regardless of additional fees. "[W]hen accepting an engagement to represent a debtor in relation to a bankruptcy proceeding, an attorney must be prepared to assist that debtor through the normal, ordinary and fundamental aspects of the process." *Id.*, citing *In re Castorena*, 270 B.R. 504, 530 (Bankr.D.Idaho 2001). "The Court in Castorena made a lengthy list of such basic matters." *Id.* In this district, such basic matters include all aspects in the main case.

■■ In *Johnson*, the UST argued "that Local Rule 9010–3(e) clearly prohibits an attorney from unbundling services during the bankruptcy case, except for an adversary proceeding as expressly stated by the rule," and that "Local Rule 9010–3(e) contemplates that the entire bankruptcy case should be deemed as a single event of representation and that matters and pro-

---

**7.** Judge Hillman writes: "A professional swim instructor takes on a new student with this understanding: You have paid me my initial fee. For that money I will lead you to the swimming pool, show you how to enter the water, and explain the basic elements of swimming. If, however, you should begin to drown, of if some other serious problem arises, I will leave you to your own resources unless you pay me more money." *See Cuddy*, 322 B.R. at 17–18. Likewise, unbundling in bankruptcy is not ethical practice of law, and is both undesirable and a violation of public policy.

ceedings during the case cannot be separated for the purpose of limiting representation." *Johnson,* 291 B.R. at 467. In *Johnson,* the UST's position was that "either an attorney is in the case or the debtor is pro se." The Court agreed then and agrees now, and wonders why the present matter originated out of 2016(b) discrepancies with barely a hint of tenuous malfeasance instead of on the basis of retainer provisions clearly in violation of LR 9010–3(e).

As the court in *Cuddy* aptly and succinctly noted: "YES, you do need a lawyer in a bankruptcy case." *Cuddy,* 322 B.R. at 17 n. 18, citing William C. Hillman, Personal Bankruptcy 23 (2nd ed.1995). In the interest of satisfying that need and continuing to practice as debtor counsel in bankruptcy, May has submitted a proposed revised retainer agreement for approval as to compliance with LR 9010–3(e). It provides, in pertinent part:

> There will be additional fees at Attorney's hourly rate of $___ or paralegal's hourly rate of $___ or flat fees, if agreed upon between Client and Attorney, for rescheduled hearings, additional first meetings of creditors, motions for relief from the automatic stay, motions for dismissal, motions for turnover or objections to exemptions, attending depositions, notices to creditors provided after the case is filed, and any schedules that need amendment after filing. Client agrees to pay Attorney for all services that Attorney renders in connection with Client's bankruptcy case.
>
> WITHDRAWAL OF ATTORNEY. Attorney reserves the right, upon nonpayment by Client of any fees or costs incurred pursuant to this agreement, to require Client to obtain alternative counsel or, if Client fails to do so within a reasonable time, to apply to the Bankruptcy Court for permission to withdraw. Until substitute counsel or Bankruptcy Court permission to withdraw is obtained, Attorney will continue to provide legal services to Client in connection with Client's bankruptcy case to the extent required by Local Bankruptcy Rules.

■ The proposed WITHDRAWAL OF ATTORNEY provision is inadequate. The following is acceptable:

> "WITHDRAWAL OF ATTORNEY. Attorney reserves the right, upon nonpayment by Client of any fees or costs incurred pursuant to this agreement, to ~~require~~ request that Client ~~to~~ obtain alternative counsel ~~or~~ and, if Client fails to do so within a reasonable time, to apply to the Bankruptcy Court for permission to withdraw. Until substitute counsel or Bankruptcy Court permission to withdraw is obtained, Attorney will continue to provide legal services to Client in connection with Client's bankruptcy case to the extent required by Local Bankruptcy Rules 9010–3(e)(4), which requires that
>
> (4) Effect of Failure to Comply.
>
> *Until a substitution of attorneys is filed or an order is entered allowing the original attorney to withdraw, the original attorney is the client's attorney of record and the original attorney shall represent the attorney's client in bringing and defending all matters or proceedings in the bankruptcy case other than adversary proceedings in which the original attorney has not yet made an appearance. Failure to receive advance payment or guarantee of attorney's fees is not grounds for failure to comply with this subsection.*"

In light of May's representation of Huynh pursuant to the terms of the former retainer agreement, a disgorgement of all fees is appropriate under the circumstances. When Huynh was subject to a

Rule 2004 examination, and still in regular contact with May as counsel of record, May did not appear at the Rule 2004 exam with Huynh. May's unequivocal testimony with respect to this event is that she asked Huynh to execute a new retainer agreement to cover the legal representation by May at the Rule 2004 exam, and that Huynh likely understood that to mean that May would not provide the representation short payment of the additional fees.

May had not sought and obtained an order of withdrawal from representing Huynh in the main case at that time. She remained Huynh's counsel and was bound by Local Rule 9010–3(e) to represent Huynh regardless of additional fees. Instead, May requested additional fees from Huynh, and did not explain that she was required to represent Huynh whether or not a new retainer was executed and whether or not additional fees were paid or guaranteed. May chose not to appear at the Rule 2004 exam and Huynh appeared alone. This situation is the precise sort of problem presented by unbundling and the result Local Rule 9010–3(e) means to avoid. May violated the LR by use of the retainer agreement and by failing to appear at Huynh's Rule 2004 exam as her counsel.

 Finally, May's cavalier attitude regarding her responsibilities under Local Rule 9010–3(e), demonstrated by her actual use of the violating retainer agreement in the Huynh case post-petition, justifies an order of disgorgement for fees received in the Bulen case where she had the debtor execute the same form agreement.

## V. DISPOSITION

IT IS HEREBY ORDERED:

1. The United States Trustee's motions to disallow and disgorge all compensation and for sanctions are denied;

2. The use of the retainer agreement as drafted and executed in the above captioned cases constitutes a violation of Local Rule 9010–3(e);

3. Attorney Barbara J. May is permanently enjoined, in any proceedings before the Bankruptcy Court in the District of Minnesota, from using the retainer agreement as drafted and executed in the above captioned cases;

4. The revised retainer agreement proposed in post-trial briefing by attorney Barbara J. May, *as modified in this order,* is approved as complying with Local Rule 9010–3(e); and

5. Barbara J. May shall disgorge attorney fees received for the representation of Brenda Y. Huynh in the amount of $2,759.00, payable to the bankruptcy estate in BKY 05–37944, and shall disgorge attorney fees received for the representation of Deanna Bulen in the amount of $2,500.00, payable to the bankruptcy estate BKY 05–31011, all payments to be made within ten (10) days of the date of this order.